Rule 23 order filed
July 11, 2007;
Motion to publish granted
August 14, 2007.

NO. 5-06-0026

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellant, | ) Effingham County. |
| | ) |
| v. | ) Nos. 05-CF-187 & 05-DT-155 |
| | ) |
| THOMAS DAMIAN, | ) Honorable |
| | ) James R. Harvey, |
| Defendant-Appellee. | ) Judge, presiding. |

_____

JUSTICE STEWART delivered the opinion of the court:

The plaintiff, the People of the State of Illinois (State), appeals the order of the circuit court of Effingham County granting the motion to suppress evidence filed by the defendant, Thomas Damian. We reverse and remand.

BACKGROUND

At the hearing on the motion to suppress, the only witness offered by either party was the arresting officer, Trooper Chad Smith (Smith) of the Illinois State Police, who was called as a witness by the defendant. Using a video recording device located in his official vehicle, Smith recorded virtually all of the events surrounding the arrest and search of the defendant's vehicle. The videotape, which continually displays the time as the events unfold, was admitted into evidence as "Defendant's Exhibit 1."

On June 12, 2005, Smith responded to a call that a motorist had run off Interstate 57 into a ditch. When Smith arrived at the scene, he found no vehicle. He proceeded to a nearby rest stop, where he saw the defendant trying to unlock his vehicle with a stick. Upon questioning, he learned that the defendant had run off the interstate into the ditch and had

1

driven his car from the ditch to the rest stop. At the rest stop, the defendant had locked his keys in his car.

At approximately 2:22 p.m., Smith began recording the events and conversations at the rest stop using the video equipment in his police vehicle. At this point, the defendant was in the squad car and was answering questions related to the incident. Smith told the defendant that if he had hit something, Smith would be required to fill out a crash report. The defendant responded that he had simply run off the road into a ditch. He stated that he had been at a music festival, that he had gotten very little sleep, and that the incident was caused by fatigue. The defendant appeared lethargic, and his speech was slurred. Smith questioned the defendant about possible drug use.

At approximately 2:36 p.m., Smith administered a horizontal-gaze-nystagmus test on the defendant, which the defendant passed. Smith did not administer any other field sobriety tests. Because of the defendant's demeanor and his admission that he had run off the road in the middle of the afternoon and had then locked his keys in his car, Smith continued to question the defendant about drug use, including the fact that the defendant was on probation for a conviction resulting from a 2004 Coles County arrest on a cannabis charge.

Before the defendant's car door was unlocked, Smith and another officer walked around the vehicle and looked in the windows. Smith saw rolling papers inside. The defendant claimed that he rolled his own cigarettes.

At about 2:43 p.m., Smith asked the other police officer to go to the scene where the defendant had run off the road to determine whether the defendant had collided with a guardrail or other property. After investigating the scene, the officer reported that the defendant had not collided with anything.

At approximately 2:49 p.m., an officer unlocked the defendant's vehicle, using a "slim jim" provided by another motorist at the rest stop. At 2:50 p.m., during a cell phone

2

conversation, Smith stated that he was planning to arrest the defendant and that the charge would depend on whether the defendant had collided with anything. If no collision had occurred, the charge would be "DUI-drugs." At approximately 2:52 p.m., while Smith and the defendant were standing next to the open car door, Smith pointed toward the interior of the vehicle and asked the defendant whether he could "look over there." After a pause, Smith made a reference to "the whole thing." The defendant responded, "Yeah, fine with me." Smith told the defendant to step back from the vehicle. Smith did not request that the defendant sign a preprinted consent-to-search-a-vehicle form.

Smith searched the vehicle and found a bottle in a zipped backpack. The bottle contained a liquid, which looked like "dirty water," with a stem in it. Smith arrested the defendant for "DUI-drugs."

On August 24, 2005, a bill of indictment was issued charging the defendant with possession of a controlled substance, 200 grams or more of a substance containing psilocin (720 ILCS 570/402(a)(11) (West 2004) (Class 1 felony)). On September 13, 2005, the Effingham County State's Attorney filed an information charging the defendant with driving with a drug, substance, or compound in the blood or urine (625 ILCS 5/11-501(a)(6) (West 2004) (Class A misdemeanor)). The information was amended on January 12, 2006, to specify that the drug found in the defendant's system was cocaine.

On October 20, 2005, the defendant filed a motion to suppress the evidence, arguing that all of the evidence seized on June 12, 2005, was pursuant to a warrantless detention and arrest and a warrantless, nonconsensual vehicle search. The circuit court held a hearing on the motion on December 7, 2005. At the conclusion of the hearing, the court took the motion under advisement to watch the videotape marked as "Defendant's Exhibit 1." On January 10, 2006, after reviewing the videotape, the court heard the arguments of counsel and again took the matter under advisement.

3

On January 12, 2006, the circuit court granted the motion to suppress. The circuit court found that the search did not "fit into any permissible category" and that Smith did not have probable cause to search the vehicle. Although the court acknowledged that it had observed the defendant's "lethargy and 'spaced out' demeanor" on the video, it found that one explanation was "driving under the influence of something," while another was having spent the weekend at a music festival and drinking too much while sleeping too little. The court found as follows: "While there may have been (and I believe there was) reason to question his ability to drive safely, and possibly, the 'driveability' of his car, there was not probable cause to search the vehicle." The court found the consent to search invalid. The State filed a certificate of significant impairment and a timely notice of appeal.

ANALYSIS

A motion to suppress generally presents mixed questions of law and fact. *People v. Cox*, 202 Ill. 2d 462, 465-66 (2002). Findings of historical fact made by the trial court are accorded great deference and will be upheld on review unless those findings are against the manifest weight of the evidence. *People v. Lee*, 214 Ill. 2d 476, 483 (2005). The reviewing court remains free to undertake its own analysis of the facts in relation to the issues presented and may reach its own conclusions when deciding what relief should be granted. *People v. Jones*, 215 Ill. 2d 261, 268 (2005). Accordingly, we review *de novo* the ultimate question of whether a suppression of evidence is warranted. *Jones*, 215 Ill. 2d at 268.

The State argues that Smith had probable cause to arrest the defendant for driving under the influence of drugs and that, under *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), once the officer had probable cause to arrest the defendant, he had the lawful authority to search the passenger compartment of the defendant's car and any containers found therein. We agree.

The Illinois Supreme Court has observed that there are three tiers of police-citizen

encounters that, theoretically, do not constitute an unreasonable seizure. *People v. Gherna*, 203 Ill. 2d 165, 176 (2003). The first tier is an arrest supported by probable cause. *Gherna*, 203 Ill. 2d at 176. The second tier involves a brief investigative seizure conducted under the standards set forth by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). *Gherna*, 203 Ill. 2d at 177. The final tier involves consensual police-citizen encounters. *Gherna*, 203 Ill. 2d at 177.

Smith's original encounter with the defendant was in a community-caretaking role, which is distinct from a consensual encounter and is invoked to validate searches and seizures. *People v. Luedemann*, 222 Ill. 2d 530, 548 (2006). Smith responded to a call about a vehicle off the road, located the vehicle and the driver, and remained at the rest stop to assist the defendant because he was locked out of his car. When a law enforcement officer initiates an encounter to check on an individual's well-being without the initial thought of criminal activity, the function is community caretaking. *People v. Robinson*, 368 Ill. App. 3d 963, 972 (2006). The officer can, in this role, question an individual if the purpose is totally divorced from the detection, investigation, or acquisition of evidence. *Robinson*, 368 Ill. App. 3d at 972. While Smith was engaged in his community-caretaking role, he made certain observations. He noticed that the defendant was lethargic, that his balance was poor at one point, and that his speech was slow and slurred. This, combined with the defendant's action in running off the road into a ditch and locking his keys in his car, gave Smith probable cause to arrest the defendant.

The State alleges seven reasons that, taken together, made it more probable than not that the defendant was driving under the influence of drugs: (1) he was on probation for a drug offense, (2) he had run his car off the interstate into a ditch during the middle of the afternoon, (3) he had locked his keys inside his car, (4) his speech was slow and slurred and sometimes his sentences trailed off, (5) he had failed to immediately answer simple questions

and once nearly fell over, (6) he was returning from a rock festival, where drug usage is common, and (7) the officers were able to see cigarette rolling papers inside his car.

The United States and Illinois Constitutions protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6. An arrest without probable cause violates these constitutional provisions. *Lee*, 214 Ill. 2d at 484. A peace officer may make a warrantless arrest when he "has reasonable grounds to believe that the person is committing or has committed an offense." 725 ILCS 5/107-2(1)(c) (West 2004). As used in the statute, the phrase "reasonable grounds" is synonymous with "probable cause." *People v. Tisler*, 103 Ill. 2d 226, 236-37 (1984). The determination of whether an officer has probable cause to arrest focuses on the practical and factual considerations upon which reasonable, prudent men, not legal technicians, act. *People v. Buss*, 187 Ill. 2d 144, 204 (1999). This determination is based on facts known to the police at the time of the arrest. *People v. Chapman*, 194 Ill. 2d 186, 217 (2000). In determining whether probable cause exists, the officer looks at the totality of the circumstances at the time of the arrest. *People v. Sims*, 192 Ill. 2d 592, 615 (2000). The facts known to the officer at the time of the arrest must be sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime. *People v. Love*, 199 Ill. 2d 269, 279 (2002).

Smith testified that he had been a state trooper for 9 years and that, prior to that, he had been a deputy sheriff for 4½ years. He testified that he had spent six months on the Southern Illinois Drug Task Force while he worked for the sheriff's department in Fayette County. As a result of his law enforcement experience, he had many encounters with people under the influence of controlled substances. In determining whether probable cause exists, law enforcement officers may rely on their training and experience to draw inferences and make deductions that might elude an untrained person. *Jones*, 215 Ill. 2d at 274.

Smith and another officer peered into the defendant's car while it was locked and

6

observed papers for rolling homemade cigarettes. These papers are commonly used for smoking marijuana. The defendant was on probation for possession of marijuana. These facts, taken with the defendant's demeanor, suggested the presence of marijuana.

Based on his training and experience, Smith concluded that the defendant's slow and slurred speech, his actions in running off the road in the middle of the afternoon and then locking his keys in his car, his lack of balance at one point, and the presence of rolling papers indicated he was under the influence of a controlled substance. These facts are sufficient to lead a reasonably cautious person to believe that the defendant was driving under the influence of drugs. Even the trial court noted that the defendant had a "spaced out" demeanor on the video, and the court found that there was reason to question the defendant's ability to drive safely.

The defendant asserts that his actions and demeanor were the result of a weekend of partying that left him fatigued. A probable cause determination tolerates the existence of other innocent inferences from the evidence, as long as the inferences supporting arrest remain reasonable. *People v. Long*, 369 Ill. App. 3d 860, 870 (2007). While one factor alone might appear innocuous, when a police officer views the totality of the circumstances with a trained eye, he might recognize probable criminal activity. *People v. Schmitt*, 346 Ill. App. 3d 1148, 1153 (2004). Thus, in making a probable cause determination, the relevant inquiry is not whether the suspect's conduct is guilty or innocent, but the degree of suspicion that attaches to the conduct. *Schmitt*, 346 Ill. App. 3d at 1153. In considering all of the circumstances surrounding the defendant's situation and in speaking to him and observing him, Smith, as a trained officer, was able to recognize the defendant's probable criminal conduct of driving under the influence of drugs. This inference was reasonable, even in light of the defendant's claims of innocence.

The degree of probability for establishing probable cause for search and seizure is less

7

than that necessary for demonstrating that it is more likely than not that the suspect committed a crime. *Long*, 369 Ill. App. 3d at 870. Probable cause requires less evidence than is necessary for a conviction and does not require that the officer's belief be correct or even more likely true than false. *Jones*, 215 Ill. 2d at 277. When examining the totality of the circumstances at the time of the arrest, we conclude that there was probable cause to arrest the defendant. The facts known to Smith were sufficient to lead a reasonably cautious person to believe that the defendant had committed the crime of driving while under the influence of drugs. Because there was probable cause to arrest the defendant, the trial court was incorrect in determining that the search was not incident to a lawful arrest.

When an officer makes a lawful arrest of an occupant of a vehicle, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the vehicle and examine the contents of any open or closed containers found therein. *Belton*, 453 U.S. at 460-61, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864. The Illinois Supreme Court has adopted the rule set out in *Belton*. *People v. Stehman*, 203 Ill. 2d 26, 35 (2002). When probable cause to arrest exists, a search may be conducted immediately before the arrest. *Rawlings v. Kentucky*, 448 U.S. 98, 111, 65 L. Ed. 2d 633, 645-46, 100 S. Ct. 2556, 2564 (1980); *People v. Little*, 322 Ill. App. 3d 607, 612 (2001).

The defendant argues that this search was unlawful pursuant to *Thornton v. United States*, 541 U.S. 615, 158 L. Ed. 2d 905, 124 S. Ct. 2127 (2004). He contends that an officer may search a suspect's vehicle only if the suspect is arrested. *Thornton*, 541 U.S. at 621, 158 L. Ed. 2d at 913, 124 S. Ct. at 2131. This is merely a recitation of the holding in *Belton*. In *Rawlings*, the United States Supreme Court held that where the formal arrest follows quickly on the heels of the challenged search, it does not matter whether the search preceded the arrest as long as the fruits of the search were not necessary to support probable cause to arrest. *Rawlings*, 448 U.S. at 111 n.6, 65 L. Ed. 2d at 646 n.6, 100 S. Ct. at 2564 n.6; see

8

also *People v. Tillman*, 355 Ill. App. 3d 194, 200 (2005) (a search is proper if it is conducted immediately prior to an arrest). In the instant case, the arrest took place shortly after the search. Smith had probable cause to arrest the defendant prior to searching his vehicle, and the drugs found in the defendant's vehicle were not necessary to support the probable cause to arrest.

The defendant further contends that he was not the sort of recent occupant of a vehicle described by the United States Supreme Court in *Thornton* because Smith did not observe him driving the vehicle. *Thornton* holds that *Belton* governs even when an officer does not make contact until the person arrested has left the vehicle. *Thornton*, 541 U.S. at 617, 158 L. Ed. 2d at 911, 124 S. Ct. at 2129. When Smith approached the defendant, he was standing next to the vehicle and was trying to unlock the door. Through conversation with the defendant, Smith immediately ascertained that the defendant was the individual who had run off the road into the ditch. As a result, Smith was aware that the defendant had been a recent occupant of the vehicle and, in fact, was the only recent occupant of the vehicle. *Thornton* does not hold that an officer must see the suspect driving the vehicle in order to classify him as a recent occupant of the car. *Thornton* states that an arrestee's status as a recent occupant does not turn on whether he was inside the car or outside the car when the officer first initiated contact with him. *Thornton*, 541 U.S. at 622, 158 L. Ed. 2d at 914, 124 S. Ct. at 2131-32. The concerns that warrant a search are identical whether the suspect is inside the vehicle or the suspect is next to the vehicle. *Thornton*, 541 U.S. at 621, 158 L. Ed. 2d at 913, 124 S. Ct. at 2131. The defendant was next to the vehicle when Smith approached. Smith was arresting the defendant for a driving offense. A driver who is under the influence of drugs, ran off the road, and was located standing next to his car is a recent occupant of a vehicle as contemplated by *Thornton*.

The State also argues that the search was proper under the automobile exception to

9

the warrant requirement, which provides that a warrantless search of an automobile is reasonable when the police have probable cause to believe it contains contraband. *People v. Nadermann*, 309 Ill. App. 3d 1016, 1020 (2000). The search may extend to any closed containers in the vehicle that might reasonably contain the object of the search. *People v. Smith*, 95 Ill. 2d 412, 418 (1983). In the context of the automobile exception, probable cause requires knowledge of facts that would cause a reasonably prudent person to believe that a crime had occurred and that evidence of that crime could be found in the vehicle. *Nadermann*, 309 Ill. App. 3d at 1020. In talking with the defendant, Smith noted his lethargy, slurred speech, and poor balance. Smith's experience as a police officer led him to believe that the defendant was under the influence of drugs. Smith saw rolling papers of the kind typically used for cannabis in the defendant's car. These factors gave him probable cause to believe that drugs would be found in the defendant's car.

The State argues that it does not matter whether Smith had probable cause to arrest or to search because the defendant consented to the search. We need not address this argument because probable cause existed to arrest the defendant, and the search was lawful as incident to a lawful arrest.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Effingham County is reversed, and the cause is remanded for further proceedings consistent with this decision.


Reversed and remanded.


WELCH, P.J., and GOLDENHERSH, J., concur.

NO. 5-06-0026

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | Appeal from the |
| ) | Circuit Court of |
| Plaintiff-Appellant, ) | Effingham County. |
| ) | |
| v. ) | Nos. 05-CF-187 & 05-DT-155 |
| ) | |
| THOMAS DAMIAN, ) | Honorable |
| ) | James R. Harvey, |
| Defendant-Appellee. ) | Judge, presiding. |

**Rule 23 Order Filed:**     July 11, 2007
**Motion to Publish Granted:**  August 14, 2007
**Opinion Filed**:           August 14, 2007

---

**Justices**:       Honorable Bruce D. Stewart, J.

Honorable Thomas M. Welch, P.J., and
Honorable Richard P. Goldenhersh, J.,
Concur

---

**Attorneys**     Stephen E. Norris, Deputy Director, Kevin D. Sweeney, Staff Attorney, State's
**for**           Attorneys Appellate Prosecutor, 730 E. Illinois Hwy. 15, P.O. Box 2249, Mt. Vernon,
**Appellant**     IL 62864; Hon. Ralph E. Fowler II, Assistant State's Attorney, Effingham County
                  Courthouse, 101 N. Fourth, Suite 400, Effingham, IL 62401

---

**Attorney**     Lou J. Viverito, Taylor Law Offices, P.C., 122 East Washington Avenue, P.O. Box
**for**          668, Effingham, IL 62401-0668
**Appellee**