Filed 10/20/09          NO. 4-09-0166

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Jersey County |
| ROBERT G. McDONOUGH, | ) | No. 08DT161 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Eric S. Pistorius, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

Absent police misconduct, the exclusionary rule does not apply.  In this driving-under-the-influence-of-alcohol (DUI) case, the trial court granted defendant's motion to suppress evidence on the ground that the state trooper involved had improperly seized defendant.  Because the state trooper did not engage in any police misconduct, the exclusionary rule does not apply to this case.  Accordingly, we reverse the trial court's order suppressing evidence and remand for further proceedings.

I. BACKGROUND

A. Defendant's Arrest

On October 12, 2008, Illinois State Police Trooper Greg Brunnworth, while on routine patrol, noticed a car stopped on the narrow shoulder of a busy highway.  He decided to inquire whether the driver (who later turned out to be defendant, Robert G. McDonough) needed assistance.  The trooper stopped his squad car behind defendant's car and activated his overhead emergency lights.  He then approached defendant's car and asked him whether

"everything was O.K."  The subsequent exchange resulted in defendant's arrest for DUI (625 ILCS 5/11-501(a)(2) (West 2008)).

### B. Defendant's Motion To Suppress

In November 2008, defendant filed a motion to suppress, arguing that because the trooper did not have a valid reason to approach his car and question him, the trial court should suppress the evidence the trooper obtained as a result of doing so.

The evidence presented at defendant's December 2008 hearing on his motion, which consisted of testimony from the trooper and defendant, as well as a videotape from the trooper's squad car that showed his encounter with defendant, showed the following.

On October 12, 2008, at about 7:30 p.m., the trooper was on routine patrol in his marked squad car on State Highway 100 near Grafton, which he described as a busy, four-lane highway with two lanes in each direction separated by a center median. As he traveled westbound, he noticed a car stopped on the shoulder of the eastbound lanes that had not been there 10 minutes earlier.  It was occupied by a driver and a passenger.  Although the trooper did not notice anything unusual, he decided to inquire whether the occupants needed assistance.  The trooper parked behind the stopped car and turned on his overhead emergency lights for safety reasons because (1) it was dark outside and (2) "a lot of traffic" was present.  (During the hearing, the court commented that the videotape showed the stopped car was on the shoulder six to eight inches from the highway, which was the

- 2 -

maximum amount of space the shoulder would allow.)  The trooper acknowledged that, as he parked behind the stopped car, he still did not notice anything unusual.

The trooper, who was wearing his police uniform, approached the car and asked defendant, who was the driver, whether "everything was okay."  Defendant "cracked" his car window open and responded that he was waiting for a friend. Almost immediately, the trooper detected the odor of alcohol on defendant's breath.  When the trooper asked defendant whether he had recently consumed alcohol, defendant replied that he had had "three."  The trooper asked defendant if he would submit to a field-sobriety test.  Defendant agreed and did so.  The trooper thereafter arrested him for DUI.

Defendant testified that he (1) was waiting on the shoulder of the highway for a friend who had stopped at a gas station, (2) first noticed the squad car when the trooper activated his overhead emergency lights behind defendant's car, (3) did not feel that he was free to drive away, (4) felt compelled to answer the trooper's questions, and (5) did not think he could refuse to perform the field-sobriety tests.  Defendant admitted that he refused to perform the last field-sobriety test the trooper attempted to administer because, at that point, defendant surmised that the trooper was about to arrest him.

The record also showed that (1) defendant had an open container of alcohol in his vehicle; (2) on the night of defendant's arrest, the trooper notified him of the State's intention

to suspend his driver's license under section 11-501.1 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-501.1 (West 2008)), because defendant "refused to submit to or failed to complete" a Breathalyzer test; and (3) on November 27, 2008, the State suspended his driver's licence.

The trial court took defendant's motion under advisement, and in January 2009, the court entered the following written order on that motion:

> "In determining whether a community[-] caretaking encounter with a police officer rises to the level of a Terry stop, the question is whether, under the circumstances, a reasonable person would feel free to drive away from the officer. The officer testified that after pulling in behind defendant's vehicle[,] he activated his overhead lights. This court finds that under said circumstances[,] a reasonable person would not feel free to pull away.
>
> Defendant's [m]otion to [s]uppress *** is hereby granted. Cause stricken."

See Terry v. Ohio, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1968) (police may conduct a limited investigatory stop of an individual where there exists a reasonable suspicion, based on articulable facts, that the individual is about to commit a crime).

- 4 -

The State filed a motion to reconsider the trial court's written order granting defendant's motion to suppress. In March 2009, the court denied the State's motion, finding that once the trooper activated his overhead emergency lights, a reasonable person would not have felt free to leave, and the trooper's doing so advanced the encounter to a Terry stop that was unsupported by a reasonable suspicion of criminal activity.

### C. Defendant's Petition To Rescind the Statutory Summary Suspension of His Driver's License

Shortly after the trial court granted his motion to suppress, defendant filed a petition for hearing under section 2-118.1 of the Vehicle Code (625 ILCS 5/2-118.1 (West 2008)), seeking rescission of the State's statutory summary suspension of his driver's license. The court later entered a written order rescinding defendant's statutory summary suspension based on its January 2009 order granting defendant's motion to suppress.

This appeal followed.

### II. THE TRIAL COURT'S ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS

### A. The Standard of Review

"'In determining whether a trial court has properly ruled on a motion to suppress, findings of fact and credibility determinations made by the trial court are accorded great deference and will be reversed only if they are against the manifest weight of the evidence.'" People v. Griffin, 385 Ill. App. 3d 202, 207, 898 N.E.2d 704, 708 (2008), quoting People v. Slater, 228 Ill. 2d 137, 149, 886 N.E.2d 986, 994 (2008). However, this

court reviews de novo the trial court's determination of whether suppression is warranted under those facts. People v. Gherna, 203 Ill. 2d 165, 175, 784 N.E.2d 799, 805 (2003).

### B. The Exclusionary Rule Only Applies When the Police Engage in Misconduct That Violates the Fourth Amendment

Several years ago in another DUI case, this court addressed the defendant's argument that a police officer cannot lawfully ask a driver arrested for DUI on private property to submit to the Breathalyzer test. See People v. Garriott, 253 Ill. App. 3d 1048, 1052, 625 N.E.2d 780, 784 (1993). We noted in Garriott that the defendant in effect was asking this court to impose an exclusionary rule prohibiting the introduction of a driver's refusal simply because the officer lacked statutory authority to require him to take the Breathalyzer test. Garriott, 253 Ill. App. 3d at 1052-53, 625 N.E.2d at 784. We rejected that argument and wrote the following: "No exclusionary rule should apply here because the officer did nothing wrong; although he had no authority to require defendant to take the [B]reathalyzer test, the officer did nothing wrong by requesting defendant to take the test." (Emphases in original.) Garriott, 253 Ill. App. 3d at 1052-53, 625 N.E.2d at 784. We later under-scored that conclusion as follows: "In the absence of any police misconduct, the exclusionary rule does not apply." Garriott, 253 Ill. App. 3d at 1053, 625 N.E.2d at 785.

The most recent decision of the United States Supreme Court concerning the exclusionary rule reinforces our conclusion in Garriott. In Herring v. United States, 555 U.S. ___, 172 L.

- 6 -

Ed. 2d 496, 129 S. Ct. 695 (2009), the Supreme Court addressed a situation in which an officer reasonably believed that there was an outstanding arrest warrant for the defendant, but that belief turned out to be wrong because of a bookkeeping error committed by another police employee. The Supreme Court noted the parties' agreement that the ensuing arrest was a violation of the fourth amendment. However, the parties disputed whether the exclusionary rule should be applied to the contraband found during a search incident to the defendant's arrest. Herring, 555 U.S. at ___, 172 L. Ed. 2d at 502, 129 S. Ct. at 698. The Supreme Court agreed with the government's position that suppression was not appropriate, noting that its cases "establish[ed] that such suppression is not an automatic consequence of a [f]ourth[-a]mendment violation. Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." Herring, 555 U.S. at ___, 172 L. Ed. 2d at 502, 129 S. Ct. at 698. The Court further explained its holding as follows:

> "The fact that a [f]ourth[-a]mendment violation occurred--i.e., that a search or arrest was unreasonable--does not necessarily mean that the exclusionary rule applies. [Citation.] Indeed, exclusion 'has always been our last resort, not our first impulse' [citation], and our precedents establish important principles that constrain applica-

tion of the exclusionary rule.

*** We have repeatedly rejected the argument that exclusion is a necessary consequence of a [f]ourth[-a]mendment violation." Herring, 555 U.S. at ___, 172 L. Ed. 2d at 504, 129 S. Ct. at 700.

The Supreme Court further emphasized that "[t]he exclusionary rule was crafted to curb police rather than judicial misconduct" (Herring, 555 U.S. at ___, 172 L. Ed. 2d at 505, 129 S. Ct. at 701) and noted that the extent to which the exclusionary rule is justified varies with the culpability of the law-enforcement conduct. Thus, "'an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus' of applying the exclusionary rule." Herring, 555 U.S. at ___, 172 L. Ed. 2d at 506, 129 S. Ct. at 701, quoting United States v. Leon, 468 U.S. 897, 911, 82 L. Ed. 2d 677, 691, 104 S. Ct. 3405, 3414 (1984). The Supreme Court later expanded upon this theme by noting that "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring, 555 U.S. at ___, 172 L. Ed. 2d at 507, 129 S. Ct. at 702. The Court concluded its decision in Herring as follows:

"Petitioner's claim that police negligence automatically triggers suppression cannot be squared with the principles under-

- 8 -

lying the exclusionary rule, as they have been explained in our cases. In light of our repeated holdings that the deterrent effect of suppression must be substantial and outweigh any harm to the justice system [citation], we conclude that when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.' [Citation.] In such a case, the criminal should not 'go free because the constable has blundered.' People v. Defore, 242 N.Y. 12, 21, 150 N.E. 585, 587 (1926) (opinion of the Court by Cardozo, J.)." Herring, 555 U.S. at ___, 172 L. Ed. 2d at 509, 129 S. Ct. at 704.

Given that the Supreme Court began its discussion in Herring by accepting the concession of the parties that a fourth-amendment violation had occurred in that case, we distill the Supreme Court's holding as supportive of the point this court made in Garriott 16 years ago: absent police misconduct, the exclusionary rule does not apply. The reason why is simple: if the justification for the exclusionary rule is solely to deter police misconduct (as the Supreme Court reaffirmed in Herring), then the necessary condition precedent for the exclusionary

- 9 -

rule's application is police misconduct. Thus, absent police misconduct, the exclusionary rule does not apply because there is no misconduct to deter.

The trial court here deemed defendant to be "detained" solely as a result of the trooper's activating the overhead emergency lights on his police car. The court concluded that the trooper's doing so violated the fourth amendment because, when the trooper activated those overhead lights, he had no legitimate basis for the "detention" he thereby caused. Based upon Herring and Garriott, we disagree with this conclusion because the trooper's activation of his overhead emergency lights did not constitute police misconduct, even if the trial court were correct that this action constituted a violation of the fourth amendment.

C. No Police Misconduct Occurred in This Case

The rule that absent police misconduct, the exclusionary rule does not apply is dispositive in this case because we conclude that no police misconduct occurred here. We further conclude that the trooper's activating his emergency lights as he pulled behind a stopped vehicle on a busy four-lane highway not only did not constitute misconduct, it was the entirely prudent and appropriate thing for the trooper to do. Indeed, his failure to do so could very well be viewed as dangerous.

In this case, the trial court granted defendant's motion to suppress because it found that the trooper had seized

- 10 -

defendant in violation of his fourth-amendment rights the moment the trooper activated his overhead emergency lights. By so finding, the court essentially declared that whenever a police officer approaches an already stopped vehicle and activates his overhead emergency lights in the absence of reasonable suspicion that criminal activity has or will occur, regardless of the other circumstances that may be present, the officer's action is unlawful and should be deterred by employing the exclusionary rule.

We disagree with the trial court. Its finding places a police officer in the unreasonable position of compromising not only his safety, but also the safety of any occupants of the stopped vehicle. Further, other motorists using the highway may be put at risk because of a police car parked on the highway shoulder without its emergency lights activated to warn of its presence.

As a matter of law, we reject the trial court's narrow interpretation regarding a police officer's use of his overhead emergency lights and the unreasonable bright-line rule that such a determination creates. Although police officers often use emergency overhead lights to communicate their intent to engage in an investigatory stop or detention, overhead emergency lights also serve other purposes--as in this case--like warning approaching motorists to be mindful of the presence of cars located on the shoulder of a busy highway after dusk.

Stopping on or near a highway is one of the most

dangerous aspects of police work.  Statistics compiled by the Federal Bureau of Investigation show that between 1998 and 2007, 124 on-duty officers were killed after being struck by vehicles during the performance of official police duties.  Federal Bureau of Investigation, Law Enforcement Officers Killed and Assaulted 2007, tbl. 61, available at http://www.fbi.gov/urc/killed/2007/data/table_61.html (last visited October 7, 2007).  Those duties, which include making traffic stops and assisting motorists, constitute the third leading cause of death for on-duty police officers.  Federal Bureau of Investigation, Law Enforcement Officers Killed and Assaulted 2007, tbl. 61, available at http://www.fbi.gov/urc/killed/2007/data/table_61.html (last visited October 7, 2007).  Given those statistics, we are mindful of the need to ensure officer safety during roadside stops.

In any event, we deem nothing of the trooper's activities remotely close to the police misconduct the Supreme Court discussed in Herring that would trigger suppression.  For instance, nothing about the trooper's activation of his emergency lights represents "the flagrancy of police misconduct" that constitutes an important step in the calculus of applying the exclusionary rule.  Herring, 555 U.S. at ___, 172 L. Ed. 2d at 506, 129 S. Ct. at 701.  Nor do the trooper's actions constitute "systemic error or reckless disregard of constitutional requirements" (Herring, 555 U.S. at ___, 172 L. Ed. 2d at 509, 129 S. Ct. at 704), or the "culpability of the police," thereby suggest-

ing "the potential of exclusion to deter wrongful police conduct" (<u>Herring</u>, 555 U.S. at ___, 172 L. Ed. 2d at 502, 129 S. Ct. at 698). In sum, the trooper did nothing improper in this case. Because no police misconduct is present, the exclusionary rule does not apply.

III. THE RESCISSION OF THE STATUTORY SUMMARY SUSPENSION

The State also argues that the trial court erred by rescinding the statutory summary suspension of defendant's driver's license. Specifically, the State contends, in part, that the court's written order is void because the court did not hold a hearing as required by section 2-118.1(b) of the Vehicle Code (625 ILCS 5/2-118.1(b) (West 2008)). Defendant responds that this court lacks jurisdiction to consider the court's rescission determination because the State failed to specifically appeal that decision, which defendant contends is a separate and distinct civil proceeding. However, because the court based its decision to rescind defendant's statutory summary suspension solely on its January 2009 order granting defendant's motion to suppress--which this court has determined was in error--we need not and do not address the merits of the State's argument. See 134 Ill. 2d R. 615(a) (on appeal, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded"). Instead, we vacate the court's order rescinding the statutory summary suspension.

IV. CONCLUSION

For the reasons stated, we reverse the trial court's

- 13 -

order granting defendant's motion to suppress and remand for further proceedings.  We also vacate the court's order rescinding defendant's statutory summary suspension.

Reversed in part and vacated in part; cause remanded for further proceedings.

TURNER, J., concurs.

MYERSCOUGH, J., specially concurs.

JUSTICE MYERSCOUGH, specially concurring:

I respectfully specially concur. In this case, no fourth-amendment violation occurred. Although defendant was seized, the seizure was proper under the community-caretaking doctrine. See People v. Luedemann, 222 Ill. 2d 530, 546, 857 N.E.2d 187, 197 (2006) ("Courts use the term 'community caretaking' to uphold searches or seizures as reasonable under the fourth amendment when police are performing some function other than investigating the violation of a criminal statute"); People v. Damian, 374 Ill. App. 3d 941, 944-45, 873 N.E.2d 1, 5 (2007) (officer checking on the well-being of an individual was engaged in community-caretaking functions when he observed actions by the defendant that gave the officer probable cause to arrest him).

I write separately to note my disagreement with the majority's decision to forgo an analysis of whether the fourth amendment was violated, instead determining only whether, assuming a violation of the fourth amendment occurred, the exclusionary rule should apply.

The majority finds that "[a]bsent police misconduct, the exclusionary rule does not apply." Slip op. at 1. This appears, at first blush, to be a logical extension of Herring, 555 U.S. ____, 172 L. Ed. 2d at 502, 129 S. Ct. at 698 (holding that the exclusionary rule did not apply where a negligent bookkeeping error by a police employee in another county resulted in the arrest of the defendant without probable cause or a

- 15 -

warrant).  However, I have two concerns: (1) the United States Supreme Court has consistently held that whether the fourth amendment has been violated and whether exclusion is the appropriate sanction for the violation are separate issues; and (2) the proposed test leaves unclear the conduct that should be examined when determining whether "misconduct" occurred and deprives the trial courts and law-enforcement personnel of guidance as to what is and is not permissible under the fourth amendment.

A fourth-amendment violation does not always require that evidence be suppressed.  See Leon, 468 U.S. at 906-07, 82 L. Ed. 2d at 687-88, 104 S. Ct. at 3411-12 (holding that the exclusionary rule would not be applied where the evidence was obtained by officers acting in reasonable reliance on a search warrant issued by a detached, neutral magistrate even though the search warrant was subsequently found to be unsupported by probable cause).  In fact, whether the fourth amendment has been violated and whether exclusion is the appropriate sanction for the violation are separate issues.  See Leon, 468 U.S. at 906, 82 L. Ed. 2d at 688, 104 S. Ct. at 3412, quoting Illinois v. Gates, 462 U.S. 213, 223, 76 L. Ed. 2d 527, 538-39, 103 S. Ct. 2317, 2324 (1983) ("Whether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is 'an issue separate from the question whether the [f]ourth[-a]mendment rights of the party seeking to invoke the rule were violated by police conduct'"); Arizona v. Evans, 514 U.S. 1, 10, 131 L. Ed.

2d 34, 44, 115 S. Ct. 1185, 1191 (1995) (same); see also People v. Sutherland, 223 Ill. 2d 187, 227, 860 N.E.2d 178, 208 (2006) (exclusion of evidence is a separate issue from legality of the search).

"The exclusionary rule operates as a judicially created remedy designed to safeguard against future violations of [f]ourth[-a]mendment rights through the rule's general deterrent effect." Evans, 514 U.S. at 10, 131 L. Ed. 2d at 44, 115 S. Ct. at 1191. The exclusionary rule should apply only where exclusion will result in appreciable deterrence and where the benefit of deterrence outweighs the cost. Herring, 555 U.S. at ___, ___, 172 L. Ed. 2d at 504-05, 507, 129 S. Ct. at 700, 702 (also noting the purpose of the exclusionary rule is to "deter deliberate, reckless, or grossly negligent conduct, or in some circumstances, recurring or systemic negligence").

The majority here appears to combine the two analyses-- whether the fourth amendment was violated and whether the exclusionary rule should apply. At first, the majority appears to simply assume a fourth-amendment violation occurred. Slip op. at 10 (finding "the trooper's activation of his overhead emergency lights did not constitute police misconduct, even if the trial court were correct that this action constituted a violation of the fourth amendment"). But when the majority examines whether "misconduct" occurred that would justify the application of the exclusionary rule, the majority examines the reasonableness of the trooper's conduct. Slip op. at 10-11 (noting that

- 17 -

activating the lights was "prudent," "appropriate" and important for the safety of the officer and others). However, reasonableness is the primary concern of a fourth-amendment analysis. See People v. Salinas, 383 Ill. App. 3d 481, 491, 891 N.E.2d 884, 892 (2008). The relevant factors of an exclusionary-rule analysis are whether exclusion would have a deterrent effect--a part of which is examining the conduct at issue and whether it is deterrable--and whether the benefit of exclusion outweighs the cost. Herring, 555 U.S. at ____, 172 L. Ed. 2d at 504-05, 129 S. Ct. at 700. This blending of the two analyses--one constitutional and one judicially created--by the majority is incorrect.

 In fact, the majority's reasoning is circular. How can the court determine if activating the overhead lights was "misconduct" without conducting the fourth-amendment analysis? In some instances, depending on the facts, activating the overhead light may constitute "misconduct" and other times it may not.

 Further, and assuming that by examining "misconduct" the majority means examining whether the conduct was deliberate, reckless, or grossly negligent, the majority bypasses an examination of whether the fourth amendment has been violated. The courts and police officers benefit from having judicial decisions articulating what is and is not permissible under the fourth amendment. In fact, if courts bypass a fourth-amendment analysis enough times, it would be difficult for a defendant to show errors arising from recurring negligence. See Herring, 555 U.S. at ____, 172 L. Ed. 2d at 507, 129 S. Ct. at 702 (providing that

the exclusionary rule serves to deter, in some circumstances, recurring or systemic negligence).

Finally, the conduct in this case, even had it violated the fourth amendment, was not negligent conduct or conduct based on misinformation as was the case in Herring. This was deliberate conduct. Here, the choices and actions were those of Trooper Brunnworth and, had those choices and actions been improper, could be deterrable. See People v. Estrada, No. 1-08-2909, slip op. at 1, 26 (August 28, 2009), ___ Ill. App. 3d ___, ___, ___ N.E.2d ___, ___ (involving the search of a parked and locked vehicle whose recent occupant was seized absent any articulable suspicion; the appellate court refused to relax the exclusionary rule and distinguished Herring on the ground that the officer's "choices and actions" were his own and not "impelled by administrative negligence or misinformation").

Because the trooper's conduct did not violate the fourth amendment, I nonetheless concur.