SECOND DIVISION
MARCH 23, 2010

1-08-1242

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 24594 |
| | ) | |
| WILLIE MARSHALL, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE CUNNINGHAM delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, the defendant, Willie Marshall, was convicted of one count of felony driving on a revoked license (625 ILCS 5/6-303(a) (West 2006)) and sentenced to two years of imprisonment. On appeal, the defendant argues that: (1) defense counsel was ineffective for failing to file a motion to suppress evidence; and (2) a line of questioning posed by the trial court to the State's sole witness was improperly biased against the defendant. For the following reasons, we reverse the judgment of the circuit court of Cook County and vacate the defendant's sentence.

BACKGROUND

On November 19, 2007, the defendant was arrested and later charged with four counts of felony driving while his driver's license was revoked. On March 6, 2008, a bench trial was held during which two witnesses testified to the events leading up to the defendant's arrest.

The State presented the testimony of one witness, Chicago police officer Joseph Vanourek

(Officer Vanourek). Officer Vanourek testified that on November 19, 2007, at approximately 6:20 p.m., he and his partner, Officer Bielema, were traveling westbound in a police vehicle near 1610 West Fargo Avenue in Chicago, Illinois. Officer Vanourek observed the defendant driving a white Cadillac (white car) about 100 feet away, directly in front of Officer Vanourek's police vehicle. A female passenger was seated in the passenger seat of the white car. Officer Vanourek testified that the white car was initially in a "regular lane of traffic," but then it pulled over to the right curb lane and "parked in a '[no parking]' zone along the curb," where a "No Parking" sign was posted. Based on this observation, Officer Vanourek maneuvered the police vehicle to the right curb, "pulled [up] behind the [white car]" and turned on the flashing lights of the police vehicle to "conduct a traffic stop." Officer Vanourek then exited the police vehicle and approached the defendant, who was sitting in the driver's seat of the white car. When Officer Vanourek asked the defendant for a driver's license and proof of car insurance, the defendant was only able to produce a state identification card. A name check of the state identification card revealed that the defendant's driving privileges were revoked for driving under the influence (DUI). At that point, Officer Vanourek arrested the defendant and the white car was then towed.

Later at a police station, the defendant informed the police officers that he knew that his driver's license had been revoked. Officer Vanourek issued four traffic citations to the defendant, including one for parking in a "no parking" zone and one for failing to carry car insurance.

On cross-examination, Officer Vanourek stated that approximately 20 to 25 seconds had occurred between the time he first observed the white car to the time that the defendant pulled over to the "no parking" zone. During this short period of time, Officer Vanourek did not observe any

traffic law violations being committed by the defendant. Within seconds after the white car had stopped in the "no parking" zone, Officer Vanourek's police vehicle pulled up behind the white car. Officer Vanourek noted that both he and Officer Bielema approached the defendant's white car.

Karen Aikens testified on behalf of the defendant, in support of a defense theory of necessity. She stated that she had known the defendant for 14 years. Aikens testified that on November 19, 2007, at approximately 6:20 p.m., she was driving the white car, with the defendant riding as a passenger, when she suffered an onset of acid reflux. At that point, Aikens pulled over to the side of the road. Aikens stated that during an acid reflux episode, she would be "[unable] to function or do anything until it passes," and that it would not be safe for her to operate a vehicle. When Aikens stopped the white car, the defendant "switched seats" with Aikens because the defendant had wanted to take her to a hospital. However, at no point did the defendant operate the white car. Shortly thereafter, a police vehicle arrived because the white car was in a "no parking" zone. Aikens then informed the police officers of her illness. On cross-examination, Aikens stated that after the defendant was arrested and the white car towed, she walked to nearby public transportation and went home.

At this point during the bench trial, the trial court asked Aikens the following questions:

> "THE COURT: But you weren't in the driver's seat?
>
> [AIKENS]: No, because we switched over.
>
> THE COURT: When?
>
> [AIKENS]: When I pulled in the parking space. [The
>
> defendant] was like, I want to take you to the hospital, whatever, just

3

he jumped out over, and I slid over, and I start bending down because the pain is so hard.  I just started sitting in the chair like this.  And that's when [the police] came and opened the door."

In rebuttal, the State recalled Officer Vanourek to the witnesses stand.  Officer Vanourek testified that he did not observe the woman in the white car switch seats with the defendant.  The trial court then engaged in the following exchange with Officer Vanourek:

"THE COURT: You followed the [white] car 100 or 200 feet?

[OFFICER VANOUREK]: Yes, sir.

THE COURT: You could see who was driving the car?

[OFFICER VANOUREK]: Yes, sir.

THE COURT: No doubt in your mind?

[OFFICER VANOUREK]: There is no doubt.  There was a pretty good size disparity between the man and the woman, and it was clearly him.

THE COURT: You pulled up to the [white] car and when you got to the [white] car – how soon did you get to the [white] car after it pulled into the [n]o [p]arking space?

[OFFICER VANOUREK]: Within five to ten seconds.

THE COURT: You went right to the driver's side?

[OFFICER VANOUREK]: Yes, sir."

On cross-examination during the State's rebuttal, Officer Vanourek noted that he could

"recognize the broad shoulders of a man versus that of a female." Officer Vanourek testified that he observed the white car during "dusk" and that streetlights illuminated the area. At no time prior to approaching the white car in the "no parking" zone did Officer Vanourek have the benefit of a "profile view" or a "head-on view" of the white car. Instead, Officer Vanourek's sole vantage point of the white car, while it was being driven on the road, was from behind the white car.

The trial court then asked Officer Vanourek the following questions:

> "THE COURT: You asked the defendant for his driver's license and proof of insurance?
>
> [OFFICER VANOUREK]: Yes, sir.
>
> THE COURT: And he told you what?
>
> [OFFICER VANOUREK]: He didn't say anything at the time. He just – he produced a state ID. But he said he didn't have insurance and he did not present proof of insurance.
>
> THE COURT: Did he ever tell you he wasn't driving?
>
> [OFFICER VANOUREK]: I don't recall that if he said to me, 'I wasn't driving.' I mean, I saw him driving.
>
> THE COURT: Well, did he or didn't he?
>
> [OFFICER VANOUREK]: I don't recall him saying that.
>
> THE COURT: There was no conversation as to whether he was driving the car or she was driving the car?
>
> [OFFICER VANOUREK]: No. There was no conversation

5

1-08-1242

about that."

After the parties' closing arguments, the trial court found the defendant guilty of one count of felony driving on a revoked license.[1]  625 ILCS 5/6-303(a) (West 2006).

On April 11, 2008, the defendant filed a motion for a new trial.  On April 21, 2008, the trial court denied the motion for a new trial and sentenced the defendant to two years of imprisonment. The trial court also denied the defendant's motion to reconsider sentence, which argued that the defendant's two-year sentence was excessive in view of the defendant's background and the nature of the offense.  On May 2, 2008, the defendant filed a notice of appeal before this court.

ANALYSIS

We determine the following issues: (1) whether defense counsel was ineffective for failing to file a motion to suppress evidence; and (2) whether questions posed by the trial court to the State's witness improperly biased the defendant.

We first determine whether defense counsel was ineffective for failing to file a motion to suppress evidence.

The defendant argues that defense counsel provided ineffective assistance of counsel because he failed to file a motion to suppress evidence of the defendant's revoked license, which was obtained as a result of an unlawful seizure under the fourth amendment.  U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6.  Specifically, the defendant contends that Officer Vanourek lacked statutory or constitutional grounds to conduct a Terry stop.  Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d

---

[1]The defendant was convicted on count II of the four counts of charges against him.  The trial court noted that counts I, III and IV "merged."

889, 88 S. Ct. 1868 (1968). Thus, the defendant argues, defense counsel did not use sound trial strategy because challenging the unlawful stop was the defendant's best defense.

On the other hand, the State argues that Officer Vanourek's encounter with the defendant was consensual in nature and did not amount to a seizure under the fourth amendment. Instead, the State argues that the defendant had voluntarily stopped the white car prior to Officer Vanourek's arrival behind the white car, and, other than activating the police vehicle's overhead lights, Officer Vanourek did nothing that would have made a reasonable person feel as though his freedom was restrained. Therefore, the State argues, the encounter did not trigger fourth amendment protections and a motion to suppress evidence would have had no chance of success and thus, defense counsel was not ineffective.

To successfully establish a claim of ineffective assistance of counsel, the defendant: (1) must prove that the attorney's performance fell below an objective standard of reasonableness so as to deprive him of the right to counsel under the sixth amendment (performance prong); and (2) that this substandard performance resulted in prejudice (prejudice prong). Strickland v. Washington, 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-97, 104 S. Ct. 2052, 2064-68 (1984). Under the performance prong, the defendant must overcome a " 'strong presumption that [defense] counsel's complained-of action was merely trial strategy.' " People v. Steels, 277 Ill. App. 3d 123, 127, 660 N.E.2d 24, 27 (1995), quoting People v. Medrano, 271 Ill. App. 3d 97, 100, 648 N.E.2d 218, 221 (1995). To prove prejudice, the defendant must show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " People v. King, 316 Ill. App. 3d 901, 913, 738 N.E.2d 556, 566 (2000), quoting People v. Haynes,

192 Ill. 2d 437, 473, 737 N.E.2d 169, 189 (2000), quoting Strickland, 466 U.S. at 694, 80 L. Ed. at 698, 104 S. Ct. at 2068. Specifically, the defendant must prove that "a motion to suppress evidence would have had a reasonable probability (or likelihood) of success." Steels, 277 Ill. App. 3d at 128, 660 N.E.2d at 28. A reasonable probability is one that sufficiently undermines confidence in the outcome. King, 316 Ill. App. 3d at 913, 738 N.E.2d at 566. The defendant must satisfy both prongs to prevail on his claim of ineffective assistance of counsel. However, a reviewing court may analyze the facts of the case under either prong first, and, if it deems that the standard for that prong is not satisfied, it need not consider the other prong. People v. Irvine, 379 Ill. App. 3d 116, 129-30, 882 N.E.2d 1124, 1136-37 (2008).

In Illinois, there are "at least three tiers of police-citizen encounters: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions [or Terry stops], which must be supported by 'a reasonable, articulable suspicion of criminal activity'; and (3) consensual encounters, which 'involve no coercion or detention and thus do not implicate fourth amendment interests.' " People v. Jackson, 389 Ill. App. 3d 283, 287, 906 N.E.2d 56, 59-60 (2009), quoting People v. Luedemann, 222 Ill. 2d 530, 544, 857 N.E.2d 187, 196 (2006).

"For the purposes of [the] fourth amendment, an individual is 'seized' when an officer ' "by means of physical force or a show of authority, has in some way restrained the liberty of a citizen.' " " Luedemann, 222 Ill. 2d at 550, 857 N.E.2d at 199, quoting Florida v. Bostick, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991), quoting Terry, 392 U.S. at 19 n. 16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16. Seizure occurs when a reasonable person would not feel free to decline a police officer's requests or otherwise terminate the encounter. Luedemann,

222 Ill. 2d at 550, 857 N.E.2d at 200; Jackson, 389 Ill. App. 3d at 287, 906 N.E.2d at 60 (what separates a consensual encounter from an investigative detention is whether the police officer's conduct conveyed a means of physical force or a show of authority such that the defendant's freedom of movement was restrained).

Here, Officer Vanourek testified that within seconds after he observed the defendant stop in the "no parking" zone, he maneuvered the police vehicle behind the defendant's car and turned on the flashing lights of the police vehicle to "conduct a traffic stop." Once Officer Vanourek activated the flashing lights, he approached the defendant on the driver's side of the white car and asked the defendant for a driver's license and proof of car insurance. We find that the activation of the police vehicle's overhead lights was a show of authority by Officer Vanourek and Officer Bielema such that the defendant's freedom of movement was restrained. See Village of Mundelein v. Minx, 352 Ill. App. 3d 216, 220, 815 N.E.2d 965, 970 (2004) (police officer "asserted authority by activating his emergency lights" because a reasonable person "would not have felt free to ignore the [police] officer and enter the house or walk away"). Under the totality of the circumstances, no reasonable person, upon seeing the flashing lights of the police vehicle and the approach of police officers in uniform, would have felt free to decline Officer Vanourek's request to produce the necessary identification and proof of insurance or terminate the encounter by driving away. See generally Jackson, 389 Ill. App. 3d at 287, 906 N.E.2d at 60 (a factor that tends to support a finding of nonconsensual seizure is " ' "the use of language or tone of voice indicating that compliance with the police officer's request might be compelled" ' "), quoting People v. Cosby, 231 Ill. 2d 262, 274, 898 N.E.2d 603, 611 (2008), quoting United States v. Mendenhall, 446 U.S. 544, 554, 64 L. Ed. 2d

497, 509, 100 S. Ct. 1870, 1877 (1980). Although a police officer "may approach and question a person seated in a parked vehicle without that encounter being labeled as a seizure," our review of the record did not reveal any such questioning. Luedemann, 222 Ill. 2d at 552, 857 N.E.2d at 201. Instead, Officer Vanourek's testimony unequivocally showed that upon approaching the defendant, he directed the defendant to produce his driver's license and proof of car insurance, without posing any questions regarding the welfare or actions of the defendant or his passenger–such as why the defendant pulled over or what he was doing there. But *cf.* Luedemann, 222 Ill. 2d at 534, 857 N.E.2d at 191 (police officer questioned the defendant about why he was there and asked for his identification). We reject the State's contention that the defendant was not "seized" because he had voluntarily stopped his car, rather than having stopped in response to the police vehicle's flashing lights. See Minx, 352 Ill. App. 3d at 220, 815 N.E.2d at 970 (rejecting the argument that no seizure occurred because the defendant had stopped and exited his car before noticing the police emergency lights; rather, the defendant had "submitted to them and did not leave"). Under the facts of this case, Officer Vanourek's and Officer Bielema's November 19, 2007 encounter with the defendant was not consensual and amounted to seizure within the meaning of the fourth amendment.

Based on our finding that the encounter between the defendant and Officer Vanourek was a seizure within the meaning of the fourth amendment, we must next determine whether such seizure was lawful. Under Terry, a temporary investigative detention may be conducted when a police officer has reasonable and articulable suspicion of criminal activity, short of probable cause to arrest, to justify the stop. Terry, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. The police officer must point to "specific, articulable facts that, when combined with rational inferences derived from

them, provide reasonable suspicion that the person seized has committed or is about to commit a crime." Minx, 352 Ill. App. 3d at 220, 815 N.E.2d at 970. Although the facts "supporting the [police] officer's suspicion do not need to constitute probable cause," the police officer's actions must be based on more than "a mere hunch." Minx, 352 Ill. App. 3d at 220, 815 N.E.2d at 970.

In the case at bar, Officer Vanourek testified that on November 19, 2007, he observed the defendant driving a white car about 100 feet directly in front of the police vehicle driven by Officer Vanourek. A female passenger was in the passenger seat of the white car at all times. Once the white car stopped in a "no parking" zone, Officer Vanourek stopped the police vehicle behind the white car, activated the patrol car's flashing lights and approached the defendant, who had remained seated in the driver's seat of the car. Based on Officer Vanourek's own testimony, he lacked any suspicion of criminal activity, let alone one that could be characterized as reasonable or articulable, to justify conducting a Terry stop of the defendant. Here, Officer Vanourek failed to see any traffic law violations being committed by the defendant during the 20 to 25 seconds that he observed the white car traveling on the street. Moreover, as the defendant correctly pointed out, he did not commit a parking infraction by stopping in the "no parking" zone because neither he nor Aikens left the white car unoccupied. See Chicago Municipal Code §9-4-010 (2009) (" '[p]arking (to park)' means the standing of an *unoccupied* vehicle otherwise than temporarily for the purpose of and while actually engaged in loading or unloading property or passengers" (emphasis added)); see generally Chicago Municipal Code §9-100-010 (2007) ("[t]he purpose of this chapter is to provide for the administrative adjudication of violations of ordinances defining compliance *** and regulating vehicular standing or parking within the city [of Chicago]"). Officer Vanourek's testimony showed

that the white car was occupied by the defendant and Aikens at all times. At no point did Officer Vanourek state at trial that the "no parking" zone was also a "no standing" or "no stopping" area, where the defendant would have been prohibited from stopping the white car. See Chicago Municipal Code §9-4-010 (2009) (" '[s]tanding (to stand)' means the halting of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in receiving or discharge passengers"). Thus, Officer Vanourek lacked grounds to conduct a Terry stop of the defendant's vehicle and we need not examine the defendant's alternative arguments relating to the issue of the unlawful seizure.

The State argues that even if a fourth amendment violation had occurred, the exclusionary rule did not apply to bar evidence of the defendant's revoked license because no police misconduct occurred, and cites People v. McDonough for support. People v. McDonough, 395 Ill. App. 3d 194, 917 N.E.2d 590 (2009).

In McDonough, the defendant was the driver of a car that was stopped on the narrow shoulder of a busy highway. McDonough, 395 Ill. App. 3d at 195, 917 N.E.2d at 590. A State Police trooper (state trooper) noticed the stopped car and "decided to inquire whether the [occupants] needed assistance." McDonough, 395 Ill. App. 3d at 195, 917 N.E.2d at 591. The state trooper then parked behind the defendant's car and turned on his emergency lights for "safety reasons" because "it was dark outside" and " 'a lot of traffic' " was present. McDonough, 395 Ill. App. 3d at 195, 917 N.E.2d at 591. After the state trooper exited his vehicle, he approached the defendant and asked if " 'everything was okay.' " McDonough, 395 Ill. App. 3d at 196, 917 N.E.2d at 591. When the defendant opened his car window slightly, the state trooper detected the odor of alcohol on the

defendant's breath. McDonough, 395 Ill. App. 3d at 196, 917 N.E.2d at 591. Consequently, the defendant submitted to field-sobriety tests and the state trooper arrested the defendant for DUI. McDonough, 395 Ill. App. 3d at 196, 917 N.E.2d at 591. The trial court later granted the defendant's motion to suppress evidence, on the ground that the state trooper had improperly seized the defendant. McDonough, 395 Ill. App. 3d at 196, 917 N.E.2d at 592. The trial court also entered a written order rescinding the defendant's statutory summary suspension of his driver's license. McDonough, 395 Ill. App. 3d at 197, 917 N.E.2d at 592. The appellate court disagreed and found that "the [state] trooper's activating his emergency lights as he pulled behind a stopped vehicle on a busy four-lane highway" did not constitute police misconduct and, as a safety matter, was the "entirely prudent and [right] thing to do." McDonough, 395 Ill. App. 3d at 199-200, 917 N.E.2d at 594. The appellate court also noted that a law enforcement officer's action is not necessarily unlawful and the exclusionary rule need not inevitably apply when he "approaches an already stopped vehicle and activates his overhead emergency lights in the absence of reasonable suspicion that criminal activity has or will occur." McDonough, 395 Ill. App. 3d at 200, 917 N.E.2d at 595. Instead, "other circumstances," such as safety precautions, may justify the use of the emergency lights. McDonough, 395 Ill. App. 3d at 200, 917 N.E.2d at 594-95 (noting FBI statistics that stopping on or near a highway is one of the most dangerous aspects of police work). The appellate court then reversed the trial court's order granting the defendant's motion to suppress evidence, vacated the trial court's order rescinding the defendant's statutory summary suspension of his driver's license, and remanded the case for further proceedings. McDonough, 395 Ill. App. 3d at 201, 917 N.E.2d at 596.

We find the facts of <u>McDonough</u> distinguishable from the facts of the instant case. Unlike the defendant in <u>McDonough</u>, the defendant in the case at bar did not stop on the side of a busy highway, but instead, pulled over to a "no parking" zone of a residential street. Officer Vanourek neither witnessed any traffic violations before the white car stopped, nor had any reasonable suspicion that criminal activity occurred or was about to occur after the car stopped. As a Chicago police officer, Officer Vanourek must be presumed to know the traffic and parking laws he was charged with enforcing, and the evidence revealed that the defendant violated no laws. Unlike <u>McDonough</u>, Officer Vanourek did not approach the white car with the intention of asking its occupants whether they needed assistance or if "everything was okay," in the context of fulfilling community caretaking functions under the duties of a police officer. Instead, based on Officer Vanourek's own testimony, he turned on the flashing lights of the police vehicle "to conduct a traffic stop" within 5 to 10 seconds after the defendant stopped the white car. Officer Vanourek's unlawful seizure of the defendant, knowing that the defendant had not committed any traffic or parking violations, amounted to police misconduct. Thus, we find that the exclusionary rule would have applied to bar evidence of the defendant's revoked license, obtained as a result of an unlawful seizure, had defense counsel properly filed a motion to suppress evidence.

Applying our findings to the issue of ineffective assistance of counsel, we conclude that the presumption that defense counsel opted not to file a motion to suppress evidence as a matter of trial strategy is overcome. The evidence in the record on appeal has not provided any sound reason as to why defense counsel would have chosen to forego a motion to suppress evidence and to solely pursue a defense based on the theory of necessity. Thus, we find that the performance prong under

14

<u>Strickland</u> has been satisfied and the defendant has shown that defense counsel's performance fell below an objective standard of reasonableness.

We also conclude that had defense counsel appropriately filed a motion to suppress evidence of the defendant's revoked license, the motion to suppress evidence would have had a reasonable, if not high, probability of success. As discussed above, the evidence is clear that Officer Vanourek had no reasonable suspicion upon which to base the seizure of the defendant, in light of the fact that the defendant committed no traffic or parking violations. Thus, a successful motion to suppress evidence would have changed the outcome of this case because it would have prevented the State from continuing its prosecution against the defendant for felony driving on a revoked license. 625 ILCS 5/6-303(a) (West 2006). Therefore, we find that the defendant was prejudiced by defense counsel's failure to file a motion to suppress evidence and the prejudice prong of the <u>Strickland</u> test has been satisfied.

Because a motion to suppress evidence would probably have been successful and the State could not have prevailed without the evidence of the defendant's revoked license, we reverse the defendant's conviction and vacate his sentence. See generally <u>People v. Merriweather</u>, 261 Ill. App. 3d 1050, 1056, 634 N.E.2d 361, 366 (1994). Accordingly, we need not reach the issue of whether questions posed by the trial court to the State's witness improperly biased the defendant.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and vacate the defendant's sentence.

Reversed; sentence vacated.

THEIS and KARNEZIS, JJ., concur.

1-08-1242