# Illinois Official Reports

## Supreme Court

***People v. Gaytan*, 2015 IL 116223**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOSE GAYTAN, Appellee. |
| Docket No. | 116223 |
| Filed | May 21, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of McLean County, the Hon. Robert L. Freitag, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Jason Chambers, State's Attorney, of Bloomington (Michael A. Scodro and Carolyn E. Shapiro, Solicitors General, and Michael M. Glick and Jean Godfrey, Assistant Attorneys General, of Chicago, and Patrick Delfino, Robert J. Biderman, and Thomas R. Dodegge, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People. |
| | Michael J. Pelletier, State Appellate Defender, Karen Munoz, Deputy Defender, and Lawrence Bapst and Colleen Morgan, Assistant Appellate Defenders, of the Office of the State Appellate Defender, of Springfield, for appellee. |

Justices

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Jose Gaytan, was a passenger in a car that had a rear-mounted, ball-type trailer hitch. Police officers stopped the car, believing that the trailer hitch obstructed the vehicle's license plate in violation of section 3-413(b) of the Illinois Vehicle Code (625 ILCS 5/3-413(b) (West 2010)). During the stop, the officers recovered cannabis belonging to defendant and he was subsequently charged with unlawful possession of cannabis and unlawful possession of cannabis with intent to deliver.

¶ 2    In the circuit court of McLean County, defendant filed a motion to suppress evidence, arguing that the trailer hitch was not prohibited under section 3-413(b) and, therefore, the police officers had no reasonable, articulable suspicion that an offense was being committed when they stopped the car. The motion was denied and defendant was found guilty of unlawful possession of cannabis with intent to deliver.

¶ 3    The appellate court reversed defendant's conviction, holding that the circuit court erred in denying defendant's motion to suppress. 2013 IL App (4th) 120217. We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013); R. 612(b) (eff. Feb. 6, 2013). For the reasons that follow, we reverse the judgment of the appellate court.

¶ 4                                     BACKGROUND
¶ 5    The car in which defendant was riding was stopped by police officers because the car had a ball-type trailer hitch which the officers believed obstructed the car's rear license plate in violation of section 3-413(b) of the Illinois Vehicle Code (625 ILCS 5/3-413(b) (West 2010)). When the driver of the car rolled down her window, the officers detected an odor of cannabis. A subsequent search of the car revealed a diaper bag containing cannabis, which the driver indicated belonged to defendant. Police asked defendant about the cannabis, and he nodded in agreement that it was his. The officers then arrested defendant.

¶ 6    A McLean County grand jury indicted defendant for unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(d) (West 2010)) and unlawful possession of cannabis (720 ILCS 550/4(d) (West 2010)). Prior to trial, defendant filed a motion to suppress evidence in which he contended that the trailer hitch was not prohibited by section 3-413(b) and, therefore, there was no reasonable, articulable suspicion that an offense was being committed when the officers conducted the traffic stop. Thus, defendant argued that the stop was an invalid seizure and the cannabis had to be suppressed.

¶ 7    At the hearing on defendant's motion, Chenoa police officer Karl Ladtkow testified that he and Officer Dan Crowley were on stationary radar detection patrol on Interstate 55 near Chenoa, Illinois. Ladtkow's attention was drawn to a purple Lincoln Mark V because of "the color of the vehicle and the big tires on the vehicle." As the car drove past, Ladtkow observed

it "had a trailer hitch on the back and there was a ball on the back that obscured the license plate." The officers decided to follow the vehicle.

¶ 8    Ladtkow testified that, from his perspective while following the vehicle, "the hitch was covering some of the numbers on the plate." Therefore, according to Ladtkow, the officers were unable to run a computer check of the license plate numbers to identify the owner. On cross-examination, Ladtkow explained that, as he followed behind the Lincoln, he could not see all the numbers on the plate "unless I got right up on to the bumper of the vehicle and [could] look over that and see, you know, what number that was." Ladtkow acknowledged that once he had stopped the Lincoln and walked up to it, he could see the license plate clearly despite the trailer hitch.

¶ 9    Defendant submitted into evidence a photograph of the Lincoln from a vantage point behind the vehicle, showing the license plate and the trailer hitch. (A copy of the photograph appears at the conclusion of this opinion.) According to defendant, the photo showed that while the trailer hitch "may partially obscure the bottom of the license plate," it did not obscure "any part of the numbers." Thus, because there was no material obstruction of the plate, defendant contended that the officers lacked a lawful basis for the traffic stop.

¶ 10    The circuit court denied defendant's motion to suppress. With regard to the photograph, the circuit court stated:

"I certainly understand and agree that looking at the photograph, the ball hitch in the photograph is not obstructing any of the numbers. The only thing it's obstructing is the little thing on the bottom that says Land of Lincoln or whatever it is it says down there. It doesn't obstruct the numbers. However, the photo is also obviously taken by someone who is standing right at the rear of the vehicle, and certainly the officer testified that he was further back and that the angle, therefore, was different and the ball was obstructing one of the numbers."

The court concluded that, when viewed by the police officers from their position some distance behind the vehicle, the trailer hitch obstructed at least one of the numbers on the license plate and that this obstruction violated section 3-413(b). Therefore, according to the circuit court, the police officers had reasonable grounds to detain the car.

¶ 11    Defendant moved to reconsider and to reopen the evidence to introduce the police squad car video of the traffic stop. The circuit court granted defendant's motion to reopen the evidence, and permitted introduction of the video recording.

¶ 12    The court held a hearing on defendant's motion to reconsider. At the hearing, defendant argued for the first time that section 3-413(b) prohibits only materials "on the plate or attached to the plate" such as decals, stickers and license plate covers and that objects such as trailer hitches simply were not "thought about when the statute was written." Defendant further emphasized that, because the trailer hitch was not a material attached to the plate itself, it was possible to see the numbers on the plate just by moving "over a little bit to the left or the right." For these reasons, defendant maintained the trailer hitch was not unlawful and that the motion to suppress should have been granted. The circuit court, although finding the interpretation of section 3-413(b) to be a "very interesting question of law," nevertheless rejected defendant's statutory argument.

¶ 13    Regarding the video recording, the court stated it appeared to confirm "the officer['s]" testimony that the trailer hitch "partially blocked one of the letters or numbers of the plate."

However, that confirmation was "not crystal clear." Describing the video as "grainy" and "hard to see," the court explained:

> "[I]t really doesn't clear up for me one way or the other whether this thing blocked part of the letters or not. It does appear that maybe it blocks a little piece of one of them on the video, but I can't tell if it really does or if it's just grainy from the video itself."

¶ 14    The court ultimately found the video unhelpful, concluding it "didn't add a whole lot *** to the evidence." The court denied defendant's motion to reconsider.

¶ 15    The circuit court subsequently held a stipulated bench trial and found defendant guilty of unlawful possession of cannabis with intent to deliver. The court sentenced defendant to 30 months' probation, with the condition that he serve 120 days in the county jail.

¶ 16    On appeal, the appellate court rejected the circuit court's conclusion that the police officers had a lawful basis for stopping the car. 2013 IL App (4th) 120217. The appellate court determined that section 3-413(b) prohibits only "objects obstructing the registration plate's visibility that are connected or attached to the plate *itself*" (emphasis in original) (*id.* ¶ 38), and not obstructions such as a trailer hitch that are not attached to the license plate (*id.* ¶ 2). Accordingly, the court concluded that the officers lacked reasonable suspicion of a Vehicle Code violation that would justify the traffic stop and, as a result, the motion to suppress should have been granted. Because the cannabis should have been suppressed, the appellate court reversed defendant's conviction outright. *Id.* ¶ 47. This appeal followed.

¶ 17                                    ANALYSIS

¶ 18    The ultimate issue in this case is whether the circuit court correctly denied defendant's motion to suppress evidence. When reviewing a circuit court's ruling on a motion to suppress evidence, we apply the two-part test adopted by the Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699 (1996). *People v. Absher*, 242 Ill. 2d 77, 82 (2011). First, this court will uphold the circuit court's factual findings unless they are against the manifest weight of the evidence. *Id.* Second, we review *de novo* the circuit court's ultimate legal conclusion as to whether suppression is warranted. *Id.*

¶ 19    Here, the relevant facts are not in dispute. The parties agree that the police officers stopped the car in which defendant was riding because, when viewed by the officers from behind the car at a certain distance and from a certain angle, a trailer hitch attached to the car partially obstructed at least one number of the rear license plate. Thus, our analysis focuses on the correctness of the circuit court's legal conclusion that the stop was lawful and that suppression of the evidence obtained as a result of the stop was therefore unnecessary.

¶ 20    Both the fourth amendment to the United States Constitution, which applies to the states via the fourteenth amendment (*Mapp v. Ohio*, 367 U.S. 643 (1961)), and article I, section 6, of the Illinois Constitution of 1970, guarantee Illinois citizens the right to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Generally, stopping a vehicle based on a suspected violation of the law constitutes a seizure, even if the stop is for a brief period and for a limited purpose. *People v. Jones*, 215 Ill. 2d 261, 270 (2005) (citing *Whren v. United States,* 517 U.S. 806, 809-10 (1996)). For a traffic stop to comport with the reasonableness requirement of the constitutional guarantees, the police officers must have at least " 'reasonable, articulable suspicion' " that a violation of law has occurred. *People v. Hackett*, 2012 IL 111781, ¶ 20. This means that police officers must have

- 4 -

"a particularized and objective basis for suspecting the particular person stopped" was violating the law. (Internal quotation marks omitted.) *Prado Navarette v. California*, 572 U.S. ___, ___, 134 S. Ct. 1683, 1687 (2014). If reasonable suspicion is lacking, the traffic stop is unconstitutional and evidence obtained as a result of the stop is generally inadmissible. See *People v. Sutherland*, 223 Ill. 2d 187, 227 (2006). Thus, to decide whether the circuit court properly denied defendant's motion to dismiss in this case, we must determine whether the officers had a reasonable, articulable suspicion that a violation of the law occurred at the time the vehicle was detained.

¶ 21                              *Construction of Section 3-413(b)*

¶ 22    Before this court, the State first argues that the ball-type trailer hitch on defendant's vehicle violated section 3-413(b) and this violation provided the police officers with the lawful justification for the traffic stop. According to the State, the appellate court, in reaching a contrary result, misconstrued section 3-413(b). As a result, the State contends that the circuit court was correct to deny defendant's motion to suppress and, therefore, the judgment of the appellate court should be reversed.

¶ 23    In construing a statute, the primary objective is to give effect to the legislature's intent, presuming the legislature did not intend to create absurd, inconvenient or unjust results. *People v. Christopherson*, 231 Ill. 2d 449, 454 (2008). The best indication of that intent is the statutory language, given its plain and ordinary meaning. *People v. Ramirez*, 214 Ill. 2d 176, 179 (2005). Further, in determining legislative intent, a court may consider the purpose and necessity for the law as well as the consequences that would result from construing the statute one way or the other. *People v. Garcia*, 241 Ill. 2d 416, 421 (2011). The construction of a statute is a question of law that is reviewed *de novo. Ramirez*, 214 Ill. 2d at 179.

¶ 24    At the time of defendant's arrest, section 3-413(b) stated:

> "(b) Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so as to prevent the plate from swinging and at a height of not less than 5 inches from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible and shall be maintained in a condition to be clearly legible, free from any materials that would obstruct the visibility of the plate, including, but not limited to, glass covers and plastic covers." 625 ILCS 5/3-413(b) (West 2010).

A violation of section 3-413(b) is a petty offense (625 ILCS 5/16-104 (West 2010)), punishable by fine only (730 ILCS 5/5-1-17 (West 2010)).

¶ 25    Defendant initially points out that section 3-413(b) does not mention trailer hitches, let alone prohibit them. Instead, the only reference to any prohibited items in section 3-413(b) appears in the clause, "free from any materials that would obstruct the visibility of the plate, including, but not limited to, glass covers and plastic covers." Defendant notes that this clause requires the "registration plate" to be "free from" materials. In addition, the clause specifically lists, as forbidden "materials," only glass and plastic covers, items which physically attach to the plate. Based on these observations, defendant maintains that the most natural reading of the

clause is that it refers to materials that are connected to the license plate itself, such as glass and plastic covers, decals, paint or other similar materials.[1]

¶ 26    Further, defendant emphasizes that, although the "materials clause" appears immediately after the word "legible," the clause itself specifically refers to the "visibility of the plate." Thus, defendant contends that the "materials clause" defines or limits not only the requirement that the plate be "clearly legible" but also the requirement that the plate be "clearly visible." In this way, according to defendant, the statute prohibits only those items affecting the visibility or legibility of the plate which are physically attached to the plate itself. Other items, which are attached to the vehicle but not the license plate, such as the trailer hitch at issue here, are not, defendant contends, within the scope of section 3-413(b).

¶ 27    Alternatively, defendant asserts that section 3-413(b), which is a penal statute, is ambiguous as to whether it prohibits objects that are not physically attached to the license plate. And if the statute is ambiguous, defendant maintains it should be construed narrowly in his favor under the rule of lenity. Thus, defendant contends that, in either case, section 3-413(b) does not prohibit trailer hitches.

¶ 28    The State, in response, argues that the statute has a broader scope. The State contends that the word "materials" in section 3-413(b) refers to any object whatsoever, whether connected to the license plate itself or whether attached to the vehicle. Thus, a ball-type trailer hitch is a "material" within the meaning of section 3-413(b) and if it reduces the visibility or legibility of the license plate, it is prohibited. In the alternative, the State contends that, even if the word "materials" refers solely to something attached to the license plate, the "materials clause" should be read as regulating only the legibility of the plate. The visibility of the license plate, according to the State, is a separate statutory requirement. Therefore, the State contends, if a trailer hitch obstructs the visibility of a license plate, it violates the statute, which requires that the plate be "clearly visible."

¶ 29    Notably, the State does not assert that section 3-413(b) can be read in such a way so as to permit objects which create only a *de minimis* obstruction of the plate. That is, the State asserts that section 3-413(b) prohibits *any* obstruction of a license plate, however minor the obstruction may be. In addition, the State does not contend that section 3-413(b) can be read so that only those objects which obstruct the plate when viewed from a particular angle or distance are prohibited. *Cf.* Fla. Stat. Ann. § 316.605(1) (West 2010) (requiring that a license plate be visible at a distance of 100 feet). Thus, the reading of section 3-413(b) proposed by the State is that the statute prohibits any obstruction of a license plate, however minor, by any object attached to the vehicle, when viewed from any distance or angle. Applying that rule here, the State maintains that the circuit court properly held that the trailer hitch partially obstructed the license plate when viewed by the police officers and, therefore, the officers had a lawful basis for the traffic stop.

---

[1]In 2013 (Pub. Act 97-743 (eff. Jan. 1, 2013)), the legislature removed the language "including, but not limited to, glass covers and plastic covers" from section 3-413(b) and added a separate subsection (g), which provides, in relevant part: "A person may not operate any motor vehicle that is equipped with registration plate covers." 625 ILCS 5/3-413(g) (West 2012). As amended, section 3-413(b) provides that every license plate shall be "in a place and position to be clearly visible and *** in a condition to be clearly legible, free from any materials that would obstruct the visibility of the plate." 625 ILCS 5/3-413(b) (West 2012).

¶ 30    Neither the State's nor the defendant's interpretation of section 3-413(b) is conclusively supported by the text of that provision. On the one hand, defendant's contention that the word "materials" refers solely to items attached to the license plate carries weight because "a word is known by the company it keeps" (*Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)), and the only examples of prohibited materials noted in the statute are license plate covers—items which are attached to the plate itself. On the other hand, the word "materials" is not defined in the statute and, as the appellate court below noted, the word "materials" can, in a literal sense, mean a physical object such as a trailer hitch. 2013 IL App (4th) 120217, ¶¶ 37-38.

¶ 31    Similarly, defendant's contention that the "materials clause" limits or defines the statutory requirement that the license plate be "clearly visible" as well as the requirement that the plate be "clearly legible" has force because the "materials clause" expressly refers to the "visibility of the plate" and it is axiomatic that, in interpreting a statute, we may not simply ignore statutory language. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). However, the State's contention that the visibility of the plate should be considered a separate statutory requirement also has some force because different words in a statute, such as "visible" and "legible," are generally presumed to have different meanings. *Emerald Casino, Inc. v. Illinois Gaming Board*, 346 Ill. App. 3d 18, 35 (2003). In short, as is often the case in disputes which reach this court, the language of the statute at issue is unclear.

¶ 32    Other aids to interpretation do not clarify the meaning of section 3-413(b). For example, one canon of construction holds that where the meaning of a word or portion of a statute is uncertain it is appropriate to refer to the purpose of the statute as a whole to help clarify the meaning of the contested language. *Harvel v. City of Johnston City*, 146 Ill. 2d 277, 283-84 (1992). If a portion of a statute is susceptible to two constructions, one of which will carry out the purpose of the statute as a whole and another which will defeat it, the disputed portion will receive the former construction. *Id.* at 284. The best indication of the purpose of a statute is found in the statute's language. *People v. Carpenter*, 228 Ill. 2d 250, 268 (2008).

¶ 33    Looking to statutory purpose is unhelpful here, however, because the purpose of section 3-413(b) is the very thing that is contested by the parties. Defendant asserts that the purpose of section 3-413(b) is only to regulate how a plate must be attached to a vehicle and how the plate itself must be maintained. According to defendant, the statute is not intended to regulate or prohibit separate accessories or equipment such as trailer hitches and similar items. The State, in contrast, contends that the purpose of section 3-413(b) is to ensure the complete visibility of the license plate at all times, when viewed from any angle or distance. Thus, in the State's view, the statute prohibits any obstruction of the plate, however minor, by any object attached to the vehicle. The statutory language, because it is unclear, does not resolve this dispute.

¶ 34    Considering the consequences or real world applications of the statute is also an appropriate aid to interpretation. *People v. Garcia*, 241 Ill. 2d 416, 421 (2011). However, this canon, too, is unhelpful. Defendant's contention that the purpose of section 3-413(b) is to regulate only the condition of the license plate itself would mean, as a consequence, that there would be instances when the license plate is not completely visible, at least when viewed from certain vantage points. It is not unreasonable to give this consequence weight and, therefore, to favor the State's interpretation of the statute.

¶ 35    However, the State's understanding of the statute raises consequential difficulties of its own. The State's broad interpretation of section 3-413(b) would have the effect of rendering a

substantial amount of otherwise lawful conduct illegal in Illinois. For example, consider a physically disabled Illinois resident who is unable to afford a vehicle, such as a cargo van, that is large enough to hold her wheelchair or electric scooter inside the vehicle itself. If she uses a carrier which is attached to a trailer hitch at the rear of her car to transport her wheelchair or scooter, she obstructs the visibility of her license plate and, according to the State, violates section 3-413(b). If, however, she removes the plate from her car and mounts it on the frame of the carrier so that the plate is no longer obstructed, she violates that portion of section 3-413(b) which states that the plate must be "securely fastened" "to the vehicle for which it is issued." In short, no matter what she does, she will violate the law. She cannot lawfully use a wheelchair or scooter carrier.

¶ 36    The same scenario holds true for other widely used objects such as bicycle racks and rental trailers. A rental trailer obstructs the plate that is attached to the towing vehicle, and while the trailer must have a license plate, that plate belongs to the rental company and provides no identifying information about the vehicle pulling the trailer. And even a public bus equipped with a bicycle rack on its front would be unlawful under the State's reading of section 3-413(b) if the rack were to obstruct the license plate. See, *e.g.*, http://www. transitchicago.com/bikeandride/ (last accessed on May 4, 2015) (describing a "Bike & Ride" program which equips buses operated by the Chicago Transit Authority with bike racks). Thus, under the State's reading of section 3-413(b), ball-type trailer hitches, such as the one at issue here, wheelchair and scooter carriers, bicycle racks and rental trailers would all be illegal. These consequences reasonably counsel against the broad reading of the statute proposed by the State.

¶ 37    Finally, we note, as did the appellate court, that relevant legislative history contains no mention of trailer hitches or other similar objects. See 2013 IL App (4th) 120217, ¶¶ 42-43.

¶ 38    Having considered the foregoing, we are unable to say with certainty whether the purpose of section 3-413(b) is a broad one, *i.e.*, to prohibit all objects obstructing any view of the license plate, or a narrow one, *i.e.*, to prohibit only objects attached to the license plate itself. The State's interpretation of the statute is certainly one possibility, as it furthers the reasonable goal of ensuring the visibility of license plates. But it is equally reasonable to conclude that the General Assembly did not intend to put companies who rent trailers out of business and did not intend to further burden the physically disabled by making it illegal for them to use wheelchair and scooter carriers—particularly when the statute says nothing about these matters. We conclude, therefore, that section 3-431(b) is ambiguous. See, *e.g.*, *People v. Marshall*, 242 Ill. 2d 285, 292 (2011) (a statute is ambiguous if it is "capable of being understood by reasonably well-informed persons in two or more different ways").

¶ 39    Because section 3-413(b) is ambiguous, it is appropriate to invoke the rule of lenity. Under the rule of lenity, we adopt the "more lenient interpretation of a criminal statute 'when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute.' " *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. ___, ___, 131 S. Ct. 1325, 1336 (2011) (quoting *United States v. Shabani*, 513 U.S. 10, 17 (1994)). See also, *e.g.*, *People v. Jones*, 223 Ill. 2d 569, 581 (2006); *Liparota v. United States*, 471 U.S. 419, 427 (1985) (the rule of lenity provides a "time-honored interpretive guideline when the congressional purpose is unclear"). Applying the rule here, we hold that section 3-413(b)

prohibits only those objects that obstruct the visibility and legibility of the license plate which are physically connected or attached to the plate itself.

¶ 40    Having concluded that section 3-431(b) is ambiguous, we encourage the General Assembly to revisit this statute. It would be helpful if the legislature would clarify to what extent, if any, equipment and accessories which are attached to a vehicle near a license plate are prohibited.

¶ 41                                    *Reasonable Mistake of Law*

¶ 42    The State next argues that, even if section 3-413(b) does not prohibit trailer hitches, the traffic stop was, nonetheless, valid. The State contends that the police officers' understanding of section 3-413(b) was an objectively reasonable mistake of law and, further, that this understanding of the statute, although mistaken, provided the necessary reasonable suspicion to justify stopping the vehicle.

¶ 43    The appellate court below rejected, in passing, the proposition that an objectively reasonable mistake of law may provide the reasonable suspicion necessary to justify a traffic stop. 2013 IL App (4th) 120217, ¶ 18 (citing *People v. Cole*, 369 Ill. App. 3d 960, 968 (2007), and *People v. Mott*, 389 Ill. App. 3d 539, 543 (2009)). However, after the appellate court issued its opinion in this case, the United States Supreme Court reached the opposite conclusion in *Heien v. North Carolina*, 574 U.S. ___, 135 S. Ct. 530 (2014).

¶ 44    In *Heien*, the defendant was a passenger in a car that was stopped by a North Carolina police officer because the car had only one working brake light. Cocaine was recovered from the defendant during the stop and he was subsequently convicted of attempted trafficking in cocaine. On appeal in the North Carolina Supreme Court, the defendant contended that driving with only one brake light was not prohibited under North Carolina law and, thus, there was no legal basis for the traffic stop under the fourth amendment and the cocaine should have been suppressed. The court disagreed. The court concluded that, even if the defendant's interpretation of the governing traffic law was the correct one, the law was unclear at the time of the stop, and it was objectively reasonable for the officer who stopped the car to think that a violation had occurred. According to the court, this objective, albeit mistaken, belief provided the reasonable suspicion necessary to justify the stop. *State v. Heien*, 737 S.E.2d 351, 357 (N.C. 2012).

¶ 45    The United States Supreme Court granted *certiorari* to address whether, under the fourth amendment, "reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition." *Heien v. North Carolina*, 574 U.S. at ___, 135 S. Ct. at 536. The Court concluded that it could, holding that the fourth amendment is not violated when a police officer pulls over a vehicle based on an "objectively reasonable, although mistaken, belief" that the traffic laws prohibited the conduct which was the basis for the stop. The Court explained:

> "As the text indicates and we have repeatedly affirmed, 'the ultimate touchstone of the Fourth Amendment is "reasonableness." ' *Riley* v. *California*, 573 U. S. ___, ___ (2014) (slip op., at 5) (some internal quotation marks omitted). To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.' *Brinegar* v. *United States*, 338 U.S. 160, 176 (1949). ***

*** Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law." *Id.* at ___, 135 S. Ct. at 536.

¶ 46    In so holding, the Court emphasized that the standard for determining whether a reasonable mistake of law has been made is an objective one, and that courts "do not examine the subjective understanding of the particular officer involved." *Id*. at ___, 135 S. Ct. at 539. See also *id.* at ___, 135 S. Ct. at 541 (Kagan, J., concurring, joined by Ginsburg, J.) ("If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not.").

¶ 47    Citing *Heien*, the State maintains that in this case, even if, as we have held today, section 3-413(b) prohibits only those items which are physically connected or attached to the plate itself, the stop in this case was nonetheless justified because the police officers' objectively reasonable mistake of law provided the reasonable suspicion necessary to justify the stop under the fourth amendment. We agree.

¶ 48    Although we have held above that section 3-413(b) prohibits only those materials which are attached to a license plate and, accordingly, a trailer hitch does not violate section 3-413(b), we reached that holding by finding the statute ambiguous and then applying the rule of lenity. An ambiguous statute, by its very nature, is one that it is capable of being understood by reasonably well-informed persons in two or more different ways. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 11 (2009). Further, we note that, as was the case in *Heien* (574 U.S. at ___, 135 S. Ct. at 540), no prior appellate case had addressed the scope of section 3-413(b) with respect to trailer hitches. Thus, we conclude that, under the circumstances of this case, it was objectively reasonable for the officers to have believed that the trailer hitch was in violation of section 3-413(b). Consequently, we find that the vehicle stop initiated in this case was constitutionally valid under the fourth amendment.

¶ 49    Defendant further argues, however, that we should not adopt the holding of *Heien* as a matter of state law and we should, therefore, hold that the stop was unlawful under article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 6). Accordingly, we must determine whether we should interpret our state constitution's search and seizure clause in conformity with the Supreme Court's interpretation of the fourth amendment in *Heien*.

¶ 50    As we explained in *People v. Caballes*, 221 Ill. 2d 282, 304-14 (2006), this court has adopted a "limited lockstep" approach to interpreting our search and seizure clause. This approach recognizes that the drafters of the 1970 constitution and the delegates to the constitutional convention intended the phrase "search and seizure" in article I, section 6, to mean, in general, what the same phrase means in the federal constitution. *Id.* at 314. At the same time, however, we do not surrender our state sovereignty or abandon our judicial function. *Id.* The limited lockstep doctrine allows for the consideration of "state tradition and values" (*id.*) and, thus, there may be instances where the meaning of our state search and seizure clause differs from that of the federal constitution.

¶ 51 Defendant contends that this is such an instance. Defendant observes that Illinois's exclusionary rule has traditionally been interpreted more broadly than its federal counterpart. See, *e.g.*, *People v. Krueger*, 175 Ill. 2d 60 (1996) (declining to follow *Illinois v. Krull*, 480 U.S. 340 (1987), which recognized a good-faith exception to the exclusionary rule when a search was conducted pursuant to a statute later held unconstitutional). Defendant maintains that, because this court "has historically been disinclined to extend the good-faith exception [to the exclusionary rule] to the same degree as the Supreme Court," we should decline to adopt "the extended good-faith exception created by *Heien*." To do so, defendant argues, "would drastically change Illinois constitutional law."

¶ 52 There is a fundamental flaw in defendant's reasoning. As the State points out, *Heien* did not address whether the exclusionary rule required suppression of evidence obtained as a result of an illegal seizure. That is a question that goes to the issue of the proper remedy for a fourth amendment violation. See, *e.g.*, *People v. Sutherland*, 223 Ill. 2d 187, 227 (2006) ("The question of whether to exclude evidence, however, is a separate question from whether the search is legal."). Rather, *Heien* held that the seizure, itself, was reasonable because the police officer initiated the vehicle stop based on an objectively reasonable, though mistaken, belief that the defendant's conduct was illegal. Thus, there was no constitutional violation to begin with. *Heien*, 574 U.S. at ___, 135 S. Ct. at 539 (where a seizure is supported by an objectively reasonable mistake of law, there is "no violation of the Fourth Amendment in the first place"). *Heien* did not extend the good-faith exception to the exclusionary rule. Therefore, the fact that Illinois's exclusionary rule is broader than its federal counterpart, or that this court has previously declined to recognize certain exceptions to the exclusionary rule, provides no basis for departing from *Heien*.

¶ 53 Defendant has failed to demonstrate why the holding of *Heien* is contrary to any long-standing state traditions or values, and we are persuaded by the *Heien* court's analysis. We conclude, therefore, that an objectively reasonable, though mistaken, belief as to the meaning of a law may form the basis for a constitutionally valid vehicle stop under our state constitution. For the reasons noted previously, it was objectively reasonable for the officers in this case to believe that the trailer hitch violated section 3-413(b). Consequently, we find that the traffic stop in this case was constitutionally valid under both the state and federal constitutions. For this reason, we must reverse the appellate court's judgment and affirm the circuit court's denial of defendant's motion to suppress.

¶ 54 CONCLUSION

¶ 55 For the foregoing reasons, the judgment of the appellate court is reversed. Because the circuit court did not err in denying defendant's motion to suppress, defendant's convictions are reinstated.

¶ 56 Appellate court judgment reversed.

¶ 57 Circuit court judgment affirmed.

