# Illinois Official Reports

## Appellate Court

<div style="border">

### *In re Maurice J.*, 2018 IL App (1st) 172123

</div>

| | |
|---|---|
| Appellate Court Caption | *In re* MAURICE J., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Maurice J., Respondent-Appellant). |
| District & No. | First District, Third Division<br>Docket No. 1-17-2123 |
| Filed | June 20, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-JD-00647; the Hon. Kristal Royce Rivers, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Sarah Curry, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Brian K. Hodes, and Margaret M. Smith, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Justices Fitzgerald Smith and Howse concurred in the judgment and opinion. |

**OPINION**

¶ 1        Minor respondent Maurice J. was adjudicated delinquent for committing the offense of aggravated unlawful use of a weapon (AUUW) by carrying a firearm on his person while under 21 years of age. On appeal, respondent asserts that (1) the trial court erroneously denied his pretrial motion to suppress evidence obtained as a result of an unreasonable traffic stop, (2) the evidence was insufficient, and (3) the trial court erroneously allowed the State to reopen its case to present evidence of respondent's age after he had moved for a directed verdict. For the following reasons, we reverse the trial court's judgment.

¶ 2        I. BACKGROUND

¶ 3        On March 26, 2017, the State filed a petition for an adjudication of wardship based on offenses respondent allegedly committed the day before. The State later filed an amended petition alleging four counts of AUUW and one count of unlawful possession of a firearm. Specifically, the amended petition alleged that respondent committed AUUW by carrying a weapon on his person, outside his land, home, or place of business, (1) without a Firearm Owners Identification (FOID) Card (counts I and III) and (2) while under 21 years of age (counts II and IV). 720 ILCS 5/24-1.6(a)(1) (West 2016). Two of those counts also alleged that this was respondent's second offense (counts I and II). The amended petition further alleged that respondent committed unlawful possession of a firearm in that he possessed a firearm while under 18 years of age. *Id.* § 24-3.1(a)(1). Meanwhile, respondent filed a motion to quash arrest and suppress evidence, and an evidentiary hearing was held.

¶ 4        According to 22-year-old Davon Wells, a student at Richard Daley College and an employee of Auto Zone, he was driving respondent and I.P. home at about 10 p.m. on the night in question. Wells testified that, although it was dark out, streetlights were on. In addition, Wells had known respondent for about six years, had known I.P. for about two years, and considered them to be his friends. Respondent sat in the front passenger seat, and I.P. sat in the backseat.

¶ 5        Wells testified that they were in the area of 109 West 85th Street when the police activated their siren and bright lights, which Wells acknowledged "see inside of the car." Additionally, the police car was a sport utility vehicle (SUV) and sat higher than Wells's car. Wells did not, however, see respondent or I.P. pass anything. Prior to the police activating their siren and lights, Wells was not speeding or driving erratically. He denied swerving to avoid a speed bump.

¶ 6        After Wells pulled over his car, one officer approached the driver side door, and a second officer approached the passenger side door. Neither officer had his firearm drawn. In addition, the police did not request Wells's license and registration. Wells complied with a request to exit the vehicle, however, and the officer near him placed him in handcuffs before searching him and the area in which he had been sitting. Meanwhile, the other officer had respondent exit the vehicle and handcuffed him. Finally, I.P. exited the car and was handcuffed. The officers then searched the entire car and announced that they found a firearm. Wells testified that he previously was unaware that a weapon was present. After recovering the firearm, the police arrested respondent and I.P. but did not arrest Wells.

¶ 7    Officer Delgado Fernandez testified that at the time in question, he was working with two partners, Officer Kerr and Officer Findysz, in an unmarked SUV. Officer Fernandez observed a car commit a minor traffic violation in that the driver "went around the speed bump." Specifically, the driver went toward the curb so that one set of tires was on the speed bump and the other set was level. Although the driver steered around the bump, he did not swerve. Officer Fernandez acknowledged that his reports did not say Wells avoided the speed bump.

¶ 8    After the traffic violation, Officer Fernandez activated the emergency equipment in order to curb the vehicle. From 12 to 15 feet away, he "observed the front passenger pass a handgun to the rear passenger." Officer Fernandez testified that he could clearly see that the object was a handgun and could see that three people were in the vehicle.

¶ 9    When the vehicle came to a stop, Officer Fernandez approached on the driver side, Officer Kerr approached the passenger side, and Officer Findysz approached the trunk. The officers' firearms were not drawn. Officer Fernandez then ordered the occupants out of the vehicle and secured them for officer safety. Officer Fernandez testified that he knew to look for the firearm "[i]n the direction [that] the offender gave it to the co-offender." Moreover, the officers searched the occupants and found a firearm in I.P.'s purse. Officer Fernandez put on gloves to recover the loaded .45-caliber pistol and called for assisting units. Wells was released with a traffic citation for driving around the speed bump.

¶ 10    The trial court found this was a "he said, he said" situation but ultimately believed the testimony of Officer Fernandez. Accordingly, the court denied respondent's motion and proceeded to a bench trial.

¶ 11    At trial, the parties stipulated to Officer Fernandez's prior testimony. He was also recalled and testified, in pertinent part, that respondent did not admit to possessing the firearm. In addition, Officer Fernandez did not know whether any DNA results were available from the recovered firearm. The officer further testified that the firearm was recovered in a place that was not respondent's home or place of business and that he was not engaging in activities under the Wildlife Code. See 720 ILCS 5/24-1.6(a)(1), (3)(I) (West 2016). Moreover, the State presented a certified copy of respondent's prior firearm adjudication.

¶ 12    During Officer Fernandez's testimony, the State tried but failed to establish respondent's date of birth. After the State rested, respondent moved for a directed verdict on the two AUUW counts and the unlawful possession of a weapon count that required the State to prove respondent's age (counts II, IV, and V). The State responded:

"Your Honor, the minor's age became a subject of hearsay objections that were sustained. If the Minor Respondent stipulated to juvenile jurisdiction, the Minor Respondent is clearly under the age of 21 or he would not be here in Juvenile Court. Regarding his age of 18 on that last count, I will leave to the Court to make its best determination."

Upon the court's inquiry, the State essentially then asked the court to take judicial notice that the amended petition contained respondent's birth date and that respondent stipulated to the court's juvenile "jurisdiction" at the arraignment on that petition. Respondent objected, arguing that the State had rested its case without introducing evidence on this point. Once again, upon the court's inquiry, the State confirmed that it was asking to reopen its case. The court allowed the State to do so over respondent's objection.

¶ 13     Consequently, the State formally asked the court to take judicial notice that respondent was arraigned in the court's presence and verified the facts of the amended petition, including that he was born on June 27, 2001. We note that, on appeal, respondent disputes the accuracy of the State's representations about the arraignment. In any event, the court found it was common practice for a juvenile to stipulate to juvenile jurisdiction, which required a minor to be under 18 years of age at the time of the offense. Consequently, the court took judicial notice of respondent's age and subsequently denied his motion for a directed verdict in that regard (counts II, IV, and V). The trial court did, however, grant respondent a directed verdict on the counts involving respondent's lack of a FOID card (counts I and III), as the State admittedly presented no evidence on that point. As part of the defense's case, the parties stipulated to Wells's testimony at the pretrial hearing.

¶ 14     The trial court once again found Officer Fernandez's testimony to be credible and found respondent guilty of the remaining counts. The court ordered that respondent be committed to the Department of Juvenile Justice for AUUW (count II).

¶ 15                                    II. ANALYSIS

¶ 16     On appeal, respondent first asserts that the trial court erred in denying his motion to suppress evidence because it was not reasonable for an officer to believe that Wells committed a traffic violation. Specifically, Officer Fernandez's testimony failed to show that Wells drove upon or through private property to avoid a traffic control device. Additionally, respondent argues that speed bumps do not constitute traffic control devices. Respondent contends that because Officer Fernandez lacked a sufficient basis to initiate a stop, the trial court was required to suppress evidence that a firearm was subsequently recovered.

¶ 17     Courts apply a two-part test when reviewing the trial court's ruling on a motion to quash arrest and suppress evidence. *People v. Almond*, 2015 IL 113817, ¶ 55. The trial court's findings of fact will be reversed only if against the manifest weight of the evidence. *Id.* In contrast, we review the trial court's ultimate legal ruling *de novo*. *People v. Holmes*, 2017 IL 120407, ¶ 9. In reviewing the denial of a motion to suppress, courts may examine trial evidence in addition to the evidence presented at the hearing on the motion to suppress. *People v. Hopkins*, 235 Ill. 2d 453, 473 (2009).

¶ 18     Under the fourth amendment and the Illinois Constitution of 1970, individuals have the right to be free from unreasonable searches and seizures. *Almond*, 2015 IL 113817, ¶ 56 (citing U.S. Const., amend. IV, and Ill. Const. 1970, art. I, § 6). In addition, the stop of a vehicle for a suspected violation of law constitutes a seizure, regardless of whether the seizure is brief and is made for a limited purpose. *People v. Gaytan*, 2015 IL 116223, ¶ 20. Pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), police officers may conduct a brief, investigatory stop if the officer reasonably believes that the individual in question committed or is about to commit a crime. *People v. Henderson*, 2013 IL 114040, ¶ 25.

¶ 19     A reasonable articulable suspicion is required to justify an investigative stop under the fourth amendment. *People v. Hackett*, 2012 IL 111781, ¶ 20. A police officer must be able to identify specific articulable facts, taken together with rational inferences therefrom, that reasonably warrant the stop. *Id.* Additionally, an officer's suspicion must be more than an unparticularized and inchoate suspicion or hunch. *People v. Timmsen*, 2015 IL 118181, ¶ 9. Furthermore, a *Terry* stop must be justified at its inception. *Id.* In assessing an officer's conduct, we apply an objective standard and address whether the facts available to an officer

- 4 -

at the time of the seizure would warrant a man of reasonable caution to believe that the officer acted appropriately. *Id.* If the police lacked a reasonable suspicion, the traffic stop is unconstitutional, rendering evidence obtained from the stop inadmissible. *Gaytan*, 2015 IL 116223, ¶ 20.

¶ 20        In *Heien v. North Carolina*, 574 U.S. ___, ___, 135 S. Ct. 530, 536 (2014), the United States Supreme Court held that a reasonable suspicion can be supported by an officer's misunderstanding of the scope of a law. Consequently, a police officer does not violate the fourth amendment when he stops a vehicle based on an objectively reasonable, albeit mistaken, belief that the driver's conduct leading to the stop violated traffic laws. *Id.* at ___, 135 S. Ct. at 536. This reflects that the fourth amendment permits government officials to make some mistakes. *Id.* at ___, 135 S. Ct. at 536. That being said, courts apply an objective standard in determining whether a police officer made a reasonable mistake of law, without examining the particular officer's subjective understanding. *Id.* at ___, 135 S. Ct. at 539.

¶ 21        Here, it is undisputed that Officer Fernandez purportedly stopped Wells's car due to a minor traffic violation. As the State acknowledges, "the only description of the minor traffic violation is that Wells 'went around the speed bump,' or 'avoided' it, by driving toward the curb with one wheel on the speed bump and one wheel on the even part of the street." Respondent essentially contends that, even taking Officer Fernandez's account as true, the traffic stop lacked a reasonable articulable basis.

¶ 22        Section 11-305 of the Illinois Vehicle Code states, in pertinent part, that "[i]t is unlawful for any person to leave the roadway and travel across private property to avoid an official traffic control device." 625 ILCS 5/11-305(b) (West 2016). Thus, section 11-305 clearly applies only where a driver enters private property. Similarly, section 9-8-010(c) of the Chicago Municipal Code states that "[n]o operator of a vehicle shall attempt to avoid obedience to any traffic-control device by driving upon or through any private property, alley or traffic island." Chicago Municipal Code § 9-8-010(c) (amended Oct. 28, 2015). Accordingly, the ordinance unambiguously applies only where the driver enters private property or an alley, or drives on a traffic island. *Cf. Heien*, 574 U.S. at ___, 135 S. Ct. at 540 (finding the officer reasonably believed a traffic infraction occurred where the statute was subject to two reasonable interpretations); *Gaytan*, 2015 IL 116223, ¶¶ 31, 38, 48 (finding that where the statute in question was ambiguous, the officers' mistaken belief that the law had been violated was objectively reasonable and, thus, the stop was constitutionally valid).

¶ 23        In contrast, Officer Fernandez did not testify that Wells drove his vehicle upon any of the enumerated areas. Rather, Officer Fernandez testified that Wells drove to the flat edge of the street itself to partly avoid the speed bump. We find the distinction between the street itself and private property, alleys, or traffic islands to be obvious. See also *Heien*, 574 U.S. at ___, 135 S. Ct. at 541 (Kagan, J., concurring, joined by Ginsburg, J.) (stating that an officer has made a reasonable mistake only if a statute is truly ambiguous, requiring hard interpretive work to overturn the officer's judgment).

¶ 24        The State nonetheless argues that Officer Fernandez could have reasonably, albeit mistakenly, believed that this was a violation of the ordinance because maneuvering around a speed bump while remaining in the roadway is similar to driving onto a traffic island. We categorically disagree. While vehicles are permitted to be driven on a public street in most instances, they should almost never be driven on a raised traffic island.

¶ 25    As the Court stated in *Heien*, "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Heien*, 574 U.S. at ___, 135 S. Ct. at 539. The case before us does not present an officer's misunderstanding of the law: it presents an officer's failure to know the law.

¶ 26    As stated, Officer Fernandez's mistaken belief that Wells committed a traffic violation was unreasonable where Wells never left the street to avoid a speed bump. It follows that the seizure of respondent as an occupant in Wells's car, which occurred when the police activated their lights and siren, was also unreasonable. In addition, the State does not dispute that this seizure is what led the officers to observe respondent with the firearm and to recover it. Consequently, respondent was entitled to the suppression of such evidence.

¶ 27    Respondent asserts that we must reverse the trial court's judgment outright because the State could not prove he possessed the firearm without the suppressed evidence. See *People v. Abdur-Rahim*, 2014 IL App (3d) 130558, ¶ 33. While the State asks us to affirm this case, it does not dispute that reversal without remand is appropriate should we find affirmance to be inappropriate here. Accordingly, we reverse the adjudication of delinquency outright. In light of our determination, we need not consider respondent's remaining contentions.

¶ 28    For the foregoing reasons, we reverse the trial court's judgment.

¶ 29    Reversed.