NOTICE

Decision filed 07/06/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190396-U

NO. 5-19-0396

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 17-CF-687 |
| | ) | |
| CHARLES G. HODGE, | ) | Honorable |
| | ) | Brian D. Lewis, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Welch and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court erred in granting defendant's motion to quash arrest and suppress evidence where police had a valid reason to conduct a traffic stop.

¶ 2    The State appeals the order of the circuit court of Williamson County granting the motion of defendant, Charles G. Hodge, to quash arrest and suppress evidence in a prosecution for unlawful possession of methamphetamine with intent to deliver (720 ILCS 646/55(a)(2)(B) (West 2016)). For the following reasons, we reverse and remand for further proceedings.

1

¶ 3                                    I. Background

¶ 4    On December 12, 2017, defendant's truck, occupied by Shane Crawshaw, the driver, and defendant, the front seat passenger, was stopped by Marion police sergeant Bart Baldwin. Following the traffic stop, police searched defendant and found several bags containing suspected methamphetamine. Defendant was arrested and later charged by information with one count of unlawful possession of methamphetamine with intent to deliver in violation of section 55(a)(2)(B) of the Methamphetamine Control and Community Protection Act (720 ILCS 646/55(a)(2)(B) (West 2016)), a Class 1 felony.

¶ 5    On May 9, 2019, defendant filed a motion to quash arrest and suppress evidence, arguing that he was a passenger in a vehicle stopped by police, "allegedly for an obstructed rear license plate due to a trailer ball-hitch" (see 625 ILCS 5/3-413(b) (West 2016)), as a "pretext" to conduct a warrantless search without probable cause. Defendant further asserted that the traffic stop was made without reasonable suspicion and/or probable cause. See *People v. Gaytan*, 2015 IL 116223, ¶ 39 (holding that section 3-413(b) of the Illinois Vehicle Code prohibits only those objects that obstruct the visibility and legibility of the license plate which are physically connected or attached to the plate itself).

¶ 6    On August 22, 2019, the circuit court held a hearing on defendant's motion to quash arrest and suppress evidence. The following evidence was adduced at the hearing. The defense first called Marion police detective Jesse Thompson, who testified as follows. On December 12, 2017, while assigned to the department's narcotics unit and the Drug Enforcement Agency Task Force, he assisted Marion police detective Sergeant

2

Justin Dwyer in conducting surveillance of defendant at Marion's Limited Inn hotel. At approximately 9:20 p.m., following a controlled purchase of purported methamphetamine from defendant using a confidential source, who had been supplied with official prerecorded funds, Detective Thompson observed defendant's truck leaving the parking lot with a ball-hitch that was obstructing the rear plate. Detective Thompson then made a "blanket request" for a patrol officer to initiate a traffic stop of defendant's truck. Sergeant Baldwin conducted the stop approximately 1.5 miles from the Limited Inn followed by Illinois State Police officer Shane Pettigrew, a K9 handler.

¶ 7　Upon arrival, Detective Thompson immediately approached defendant and obtained permission to search defendant's truck, which revealed several open containers of alcohol. A subsequent search of defendant's person revealed an open container of alcohol in his front pocket and eight baggies containing suspected methamphetamine in a black sock. Defendant was subsequently arrested and transported to the Marion Police Department by Sergeant Baldwin.

¶ 8　During defense counsel's direct examination of Detective Thompson, the following exchange occurred:

> "Q. At the time this truck left the parking lot, it was your intent to stop this vehicle, correct? I mean, you were going to stop this car no matter what, this truck?
> A. No, no, I wouldn't say that. It was ultimately the decision of Sergeant Dwyer, who controlled the aspects of what occurred prior to 9:20 p.m. It was ultimately his decision to stop the vehicle.
> Q. Okay. Then did Sergeant Dwyer instruct you to choreograph a traffic stop on this F-150 occupied by [defendant] and Crawshaw?
> A. Yes."

3

¶ 9    According to Detective Thompson, the purpose of the stop was for the "alleged obstructed plate" and "the distribution of [methamphetamine]." He did not see any other traffic violations. Detective Thompson and Sergeant Dwyer each prepared a report. Specifically, Detective Thompson's report, written the day after the defendant's arrest, referenced Sergeant Dwyer's report as documenting the surveillance conducted due to defendant's role in the distribution of methamphetamine.

¶ 10   Detective Thompson clarified that the truck was pulled over, not just for the obstructed plate, but for what was commonly referred to as a "buy-bust," which he described as "a stop of a defendant, post-sale of drugs, to recover contraband and prerecorded official advanced funds ***." Detective Thompson further testified that he received information from Sergeant Dwyer that the confidential source had advised that defendant possessed a "black bag" with an additional amount of methamphetamine.

¶ 11   The defense next called Sergeant Dwyer, who testified as follows. On December 12, 2017, while assigned to the department's narcotics unit, he was working surveillance of defendant at the Limited Inn for the purpose of conducting a controlled buy of methamphetamine using a confidential source. Following the controlled buy, the confidential source returned to Sergeant Dwyer's vehicle for "debriefing." Sergeant Dwyer then conveyed an order to both Detective Thompson and Sergeant Baldwin to conduct a traffic stop of defendant's truck. Sergeant Dwyer did not see a traffic violation but instructed Detective Thompson to "choreograph" a traffic stop. Sergeant Dwyer could not recall whether he ordered the traffic stop before the defendant's truck was in motion, and, even though the controlled buy was recorded, Sergeant Dwyer did not review the

4

recording prior to authorizing the traffic stop. According to Sergeant Dwyer, his written report "specifically" states that he instructed Detective Thompson to choreograph a traffic stop of defendant's truck.

¶ 12 During the State's cross-examination of Sergeant Dwyer, the following exchange occurred:

> "Q. Prior to the Defendant being stopped, did you have information that the Defendant had sold suspected or purported methamphetamine to a confidential [source]?
> A. Yes. I actually observed the hand-to-hand transaction myself. In typical fashion, the confidential source was provided money, searched, returned to my location with drugs, the same items that I observed during the hand-to-hand transaction. During the debrief of the confidential source, the C.S. advised that [defendant] said that he was good for a while, had a black bag with several small bags of methamphetamine that contained approximately 10 grams. That was when I instructed Detective Thompson to choreograph a traffic stop on the vehicle.
> Q. Okay. So the real purpose of the stop was to deal with the sale of meth; is that right?
> A. That's correct."

¶ 13 On redirect examination, Sergeant Dwyer testified that he was not present at the traffic stop because he was debriefing the confidential source, and the traffic stop was "fairly short in duration." Sergeant Dwyer also explained that Detective Thompson prepared a separate report because Sergeant Dwyer did not personally witness the events that occurred during the stop. Sergeant Dwyer also confirmed that Detective Thompson's report, which states that "the surveillance was being conducted due to [defendant's] role in the distribution of crystal ice methamphetamine, which is documented in MPD case 17-003838," references Sergeant Dwyer's report.

5

¶ 14     Defense counsel then informed the circuit court that Sergeant Baldwin was unavailable to attend the hearing, but the parties had agreed to orally stipulate as to Sergeant Baldwin's testimony as follows. On December 12, 2017, Sergeant Baldwin received a request from Detective Thompson to conduct a traffic stop; that the basis for the traffic stop was a ball-hitch obstruction to a plate on the truck in question; that he did not issue any citations during this traffic stop; that he transported defendant to the Marion police station; that he observed no other violations involving this vehicle.

¶ 15     At the conclusion of the hearing, the circuit court asked the prosecutor why police did not stop defendant immediately when they saw a felony occurring. The prosecutor responded that, while not shown in evidence, her understanding was that police had wanted to protect the identity of the confidential source. The court then took the case under advisement.

¶ 16     On September 4, 2019, the circuit court entered an order granting defendant's motion to quash arrest and suppress evidence. In doing so, the court found "[d]efendant was a passenger in a motor vehicle, which was stopped in an admitted 'choreographed' traffic stop, for the stated violation of a license plate obstructed by a ball[-]hitch," and no other "moving violations or equipment violations of the vehicle" were observed. The court also found that, "[s]ubsequent to the traffic stop," police "acting on other knowledge, [found] the [d]efendant *** to have allegedly been in possession of methamphetamine." Lastly, relying on *Gaytan*, 2015 IL 116223, ¶ 39, the court concluded that the officers did not have a reasonable belief that a ball-hitch constituted an unlawful obstruction in violation of the statute (625 ILCS 5/3-413(b) (West 2016)) thus,

6

the stop was unlawful and unconstitutional. The State, in turn, filed a certificate of impairment and this timely appeal on September 18, 2019.

¶ 17                                II. Analysis

¶ 18    The State claims that unrebutted evidence demonstrates that law enforcement officers had reasonable suspicion, if not probable cause, to effectuate a traffic stop of defendant's vehicle based on an objectively reasonable belief that defendant was in possession of methamphetamine and, immediately prior to the stop, had delivered methamphetamine to a confidential source. We agree.

¶ 19    Before turning to the merits, we briefly discuss the standard of review applicable to our analysis. Generally, a reviewing court applies a two-part test when reviewing rulings on a motion to suppress evidence. *People v. Hopkins*, 235 Ill. 2d 453, 471 (2009) (citing *People v. Wear*, 229 Ill. 2d 545, 561 (2008)). The circuit court's factual findings are entitled to great deference and will be disturbed only if they are against the manifest weight of the evidence. *Id.* However, the circuit court's ultimate ruling on whether suppression is warranted is reviewed *de novo*. See *People v. Oliver*, 236 Ill. 2d 448, 454 (2010) (applying *de novo* review of the court's ultimate ruling on whether suppression is warranted).

¶ 20    Here, the circuit court's findings regarding facts and circumstances leading to and surrounding the traffic stop are not in dispute. In its written order granting defendant's motion to suppress evidence and quash arrest, the circuit court found that "[d]efendant was a passenger in a motor vehicle, which was stopped in an admitted 'choreographed' traffic stop, for the stated violation of a license plate obstructed by a ball[-]hitch." The

7

court also found that officers observed no other moving or traffic violations as a basis for the traffic stop, but that, "[s]ubsequent to the traffic stop," police "acting on other knowledge, [found] the [d]efendant *** to have allegedly been in possession of methamphetamine." The question before this court is whether these undisputed facts warrant suppression; thus, our review is *de novo*.

¶ 21 The fourth amendment guarantees the right to be free from unreasonable searches and seizures. U.S. Const., amend. IV; *People v. Lockett*, 311 Ill. App. 3d 661, 666 (2000). However, not every encounter between the police and a private citizen results in a seizure. *People v. Lake*, 2015 IL App (4th) 130072, ¶ 35. "The Illinois Supreme Court has observed that there are three tiers of police-citizen encounters that, theoretically, do not constitute an unreasonable seizure." *People v. Damian*, 374 Ill. App. 3d 941, 944 (2007). "The first tier is an arrest supported by probable cause." *Id*. "The second tier involves a brief investigative seizure conducted under the standards set forth by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)." *Damian*, 374 Ill. App. 3d at 944. "The final tier involves consensual police-citizen encounters." *Id*. While reasonable suspicion is a less demanding standard than probable cause, the fourth amendment requires at least a minimal level of objective justification for making the stop. *People v. Rhinehart*, 2011 IL App (1st) 100683, ¶ 10 (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

¶ 22 Vehicle stops are subject to the fourth amendment's requirement of reasonableness. *People v. Hackett*, 2012 IL 111781, ¶ 20. In determining the reasonableness of the seizure and search, our inquiry is a dual one—"whether the

8

officer's action was justified at its inception" and "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19-20. The validity of a stop must be evaluated by considering the totality of the circumstances as a whole. *People v. Timmsen*, 2016 IL 118181, ¶ 9. Moreover, a defendant bears the ultimate burden of proving that the evidence was obtained by an illegal search or seizure. *People v. Gipson*, 203 Ill. 2d 298, 306-07 (2003). With these principles in mind, we turn to the merits.

¶ 23    Initially, we note that it is undisputed that defendant was a passenger in his own truck, which was driven by another person, Crawshaw, when the traffic stop was conducted. As a passenger detained at the scene of a traffic stop, defendant had standing to challenge the basis for the traffic stop. *People v. Lomas*, 349 Ill. App. 3d 462, 468 (2004). Likewise, the parties do not dispute that defendant was seized within the meaning of the fourth amendment as a result of the traffic stop. The parties disagree, however, as to the first inquiry—the reasonableness of the stop. The defense argued, and the circuit court agreed, that the stop of defendant's truck, premised on a ball-hitch obstructing a license plate, was unreasonable with reliance on *Gaytan*, 2015 IL 116223, ¶ 39. In our view, this reasoning was fundamentally flawed because it failed to properly consider the totality of the circumstances leading to the traffic stop.

¶ 24    On appeal, defendant's primary assertion is that the circuit court rejected the State's "new theory" that "the stop was justified on the basis of an alleged hand-to-hand drug transaction between [defendant] and a confidential [source] that [Sergeant] Dwyer claimed to have witnessed." We find no evidentiary facts in the record to validate this

9

assertion, and, in fact, the court made no express findings that the law enforcement witnesses lacked credibility. Additionally, Detective Thompson's report, written the day after defendant's arrest, referenced Sergeant Dwyer's report, which, according to Sergeant Dwyer, specifically states that he instructed Detective Thompson to conduct a choreographed stop of defendant's truck. Lastly, consistent with these uncontradicted facts, as explained above, the court found both that "[d]efendant was a passenger in a motor vehicle, which was stopped in an admitted '*choreographed*' traffic stop," and that "[s]ubsequent to the traffic stop," police "*acting on other knowledge*, [found] the [d]efendant *** to have allegedly been in possession of methamphetamine." (Emphases added.) Accordingly, we find defendant's assertion unsupported and baseless.

¶ 25    Here, in granting defendant's motion, the circuit court narrowly focused on the validity of the traffic code violation, or the "choreographed" basis for the traffic stop. In doing so, the court disregarded the facts that demonstrated an additional, valid reason for the traffic stop existed. It is uncontroverted that Detective Thompson and Sergeant Dwyer were working together with a confidential source to arrange a controlled purchase of methamphetamine before the traffic stop took place. Sergeant Dwyer testified that he had personally observed defendant sell, in a hand-to-hand transaction, purported methamphetamine to the confidential source. Prior to authorizing a choreographed traffic stop, Sergeant Dwyer also received information from the confidential source that defendant possessed an additional amount of methamphetamine in a black bag. Following the successful controlled purchase, Detective Thompson, acting on Sergeant Dwyer's instruction to "choreograph" a traffic stop, made a "blanket request" for a patrol officer to

10

initiate a traffic stop of defendant's truck as defendant was leaving the hotel parking lot where the controlled purchase took place. Detective Thompson, observing what he believed was a vehicle code violation—obstructed rear license plate—used that violation as the choreographed reason for stopping defendant's truck. However, Detective Thompson also explained that the purpose of the stop was to conduct a "buy-bust" to recover contraband and prerecorded funds, and that "ultimately" it was Sergeant Dwyer's decision to stop defendant's truck. Consistent with Detective Thompson's testimony, Sergeant Baldwin's stipulated testimony confirms that, prior to initiating the traffic stop, he received Detective Thompson's request to make the stop.

¶ 26 Considering the totality of the circumstances and drawing all reasonable inferences therefrom, we conclude that the traffic stop of defendant's vehicle was reasonable. Sergeant Dwyer had a valid reason to authorize the traffic stop, namely, that Sergeant Dwyer believed that defendant was in unlawful possession of methamphetamine and, prior to the traffic stop, had witnessed defendant deliver purported methamphetamine. Under these circumstances, it is also reasonable to infer that Sergeant Dwyer, in authorizing a choreographed traffic stop, wanted to conceal the nature and origins of the drug-related information to protect the identity of the confidential source.

¶ 27 In light of the foregoing, we find that defendant failed to establish that the truck in which he was a passenger was unlawfully stopped. Accordingly, we conclude that the circuit court erred in granting defendant's motion to quash arrest and suppress evidence.

¶ 28                              III. Conclusion

¶ 29    For the reasons stated, we reverse the judgment of the circuit court of Williamson

County and remand for further proceedings.


¶ 30    Reversed and remanded.